# THIRD NAT. BANK IN NASHVILLE v. CARVER et al.
## —218 S. W. (2d) 66.

Middle Section.   Dec. 3, 1948.

Petition for Certiorari denied by Supreme Court, March 11, 1949.

522

Charles L. Cornelius and W. Ovid Collins, Jr., both of Nashville, for Third National Bank.

Williams, Cummings & West of Nashville, for David L. Carver and Mrs. A. P. Carver.

Burt Francis, of Nashville, for Jesse R. Olive.

FELTS, J. This suit was brought by the Third National Bank against two of its joint depositors and the payee of a check of one of them, to settle a controversy arising out of its payment of the check after they had instructed it by telephone not to pay the check.

Mrs. A. P. Carver and her son David L. Carver carried in the bank a joint account in the names of both but subject to the check of either of them. The son gave his check for $500 to Jesse Olive for the purchase of a boat.

He decided to stop payment of the check because Olive had misrepresented the condition of the boat. His mother accordingly telephoned the bank about 8:30 A.M. before it opened and before the check was presented.

The bank averred in its bill that its employee told Mrs. Carver to bring it a stop-payment-order signed both by herself and her son, that she did this about noon, that in the meantime, about 10:30 A.M., it paid the check to Olive and charged the amount to their account, but that they were denying its right to do this and threatening to sue it for the $500 it had paid from their account on the check.

It averred that it was not liable to them, but if it should be held liable to them, it would be entitled by way of subrogation to recover either against David L. Carver or Jesse R. Olive, depending on whether the latter had misrepresented the boat. It also alleged that neither of them was claiming the boat and that it was entitled to have a receiver to sell the boat for its partial reimbursement. It prayed for appointment of a receiver and for a decree whether it was liable to the Carvers and, if so, whether David L. Carver or Jesse R. Olive was liable to it.

On the day the bill was filed a receiver was appointed. Two days later he reported that he had examined the boat and found it was of no substantial value. On the same day a decree was entered confirming this report, adjudging the boat to be "wholly without value," and discharging the receiver.

The Carvers demurred to the bill upon the grounds, among others, that it showed no right in the bank to any relief, it showed the bank had no equity and no interest in the transaction between David L. Carver and Jesse R. Olive, it was multifarious, it stated no cause of action

but at most merely showed the bank was threatened with a lawsuit to which it had a valid defense and that the court had no jurisdiction to entertain the bill. Jesse R. Olive filed a similar demurrer.

Before these demurrers were acted upon the bank filed a supplemental bill averring that, since the discharge of the receiver, doubt had arisen as to the court's jurisdiction; but that there existed an actual controversy among the parties within the court's jurisdiction under the Declaratory Judgments Act; that the Carvers were claiming the bank was liable to them for paying the check after receiving the stop-payment-order; that if they should sue and succeed in establishing the bank's liability to them, it would become entitled to be subrogated to the rights and equities either of the payee or of the drawer of the check, depending upon which was at fault in the transaction; and that it was entitled to a declaratory judgment as to the rights of the parties in the premises.

The Carvers demurred to the bill and its supplement upon the grounds that it showed that the bank had no right of subrogation; that it was multifarious, setting up different and disconnected matters against the defendants; and that it was repugnant, averring one state of facts to justify the bank's payment of the check and another and contradictory state of facts to make out its right to subrogation. The Chancellor overruled all the demurrers, Olive filed an answer, and the Carvers filed an answer and cross-bill. They averred that they had stopped payment of the check because of Olive's misrepresentations, that the bank accepted the stop-payment-order by telephone and agreed to stop payment of the check, and that it thereafter wrongfully paid the check and charged the amount to their account and was liable to them therefor.

The cause was heard orally before the Chancellor according to the forms of chancery. He found that the bank's agent accepted the telephone stop-payment-order by the mother and agreed to stop payment of the check. But he was of opinion that it was not bound to do so without an order of the son, the drawer of the check; and that the bank had properly paid the check, charged it to their account, and was not liable to them. He was further of the opinion that even if the bank had wrongfully paid the check, still they could not recover against the bank because it would be entitled to recover against David L. Carver by way of subrogation to the rights of Olive, to whom it paid the check. The Chancellor accordingly entered a decree dismissing the cross-bill and taxing the costs against the Carvers.

They appealed and insist that the Chancellor ought to have sustained their demurrers to the original and the supplemental bill; and that he ought to have sustained their cross-bill, held the bank liable to them for wrongfully paying the check, and decreed them a recovery for the amount of it.

██ It is said for the bank that the Chancellor overruled the demurrers without granting appellants leave to rely upon the demurrers in their answers and that this ruling was final and is not now open to review. It is true it was final and binding upon the Chancellor. Upon appeal, however, it is open to review by the appellate courts. Gibson's Suits in Chancery, 3d Ed., sec. 315; Boyd v. Sims, 87 Tenn. 771, 774, 11 S. W. 948; Evans v. White et al. 184 Tenn. 435, 441, 201 S. W. 2d 207.

As we have seen, the bill and its supplement presented these two theories: (1) The bank properly paid the check for the Carvers and was not liable to them, and (2) if it should be held liable to them, it would become entitled to

be subrogated to the rights of the payee or to the rights of the drawer of the check. According to the first theory, the bank, as agent for the Carvers, paid the check for them by their authority and with their money. The payment was theirs, not the bank's and it gave them the check as its voucher. This would extinguish the rights of all the parties to that instrument, cancel it, and leave nothing to which the bank could be subrogated.

So these theories could not both be true. To avoid the repugnancy, the bill stated the second only hypothetically. It said if the bank should be held liable to the Carvers for the unauthorized payment of the check, it would become entitled to subrogation, i. e., would become the owner of the check, have the right to treat the check as still alive, and be substituted to the rights the payee would have had if the check had not been paid, or to the rights the drawer (David L. Carver) would have had against the payee for the latter's fraud, if any.

██ ██ But this latter theory is not correct. Mere liability on the part of the bank to the Carvers would not entitle it to the remedy of subrogation. Before it would have the right to the cancelled check, the right to treat it as still subsisting, and the right to be substituted to rights and remedies of the payee or drawer, the bank would first have to pay the Carvers their money back. To entitle one to subrogation he must have paid the debt of the creditor to whose rights he seeks to be subrogated. Gibson's Suits in Chancery, 4th Ed., sec. 964; Knaffl v. Knoxville Banking & Trust Co., 133 Tenn. 655, 182 S. W. 232, Ann. Cas. 1917C, 1181; see Northampton Nat. Bank v. Smith, 169 Mass. 281, 47 N. E. 1009, 61 Am. St. Rep. 283; Usher v. A. S. Tucker Co., 217 Mass. 441, 105 N. E. 360, L. R. A. 1916F, 826.

██ ██  We think the bill and its supplement failed to state a cause under the Declaratory Judgments Act. That Act deals only with present rights that have accrued under presently existing facts.  It gives the courts no power to determine future rights or possible controversies in anticipation of events that may or may not occur. Ball v. Cooter et al., 185 Tenn. 631, 634, 207 S. W. 2d 340, 342; Coleman v. Henry, 184 Tenn. 550, 554, 201 S. W. 2d 686; Jared et al. v. Fitzgerald et al., 183 Tenn. 682, 688, 689, 195 S. W. 2d 1, 4; Newsum v. Interstate Realty Co., 152 Tenn. 302, 278 S. W. 56; Annotations, 12 A. L. R. 52, 69, 87 A. L. R. 1205, 1215-1219.

██  It does not enable the courts to give advisory opinions upon what the law would be upon a theoretical or hypothetical state of facts. Hodges v. Hamblen County, 152 Tenn. 395, 399, 277 S. W. 901; Ball v. Cooter et al., supra; Jared et al. v. Fitzgerald et al., supra; Ashwander v. Tennessee Valley Authority, 297 U. S. 288, 324, 56 S. Ct. 466, 80 L. Ed. 688, 699; Aetna Life Ins. Co. v. Haworth, 300 U. S. 227, 241, 57 S. Ct. 461, 81 L. Ed. 617, 108 A. L. R. 1000; Electric Bond & Share Co. v. Securities and Exchange Commission, 303 U. S. 419, 443, 58 S. Ct. 678, 82 L. Ed. 936, 948, 115 A. L. R. 105.

██  Nor does it enable the courts to give an opinion to help the parties in another transaction, Hodges v. Hamblen County, supra; Ball v. Cooter et al., supra, or to make a declaration with regard to a claim which complainant merely fears the defendant may assert in the future. Heller v. Shapiro, 208 Wis. 310, 242 N. W. 174, 87 A. L. R. 1201, 1203; Annotations, 12 A. L. R. 73-75; 87 A. L. R. 1219; 16 Am. Jur. 285, 286.

The only existing facts stated by the bill and its supplement were the facts that the bank had properly paid the check for the Carvers, and they were threatening

it with a lawsuit to which it had a valid defense; that it merely feared they might in the future assert an unfounded claim against it. The other matters averred were the hypothetical state of facts: that if the Carvers persisted in their claim, if they should sue, and if they should succeed in establishing liability of the bank to them, then it would become subrogated to the rights of the payee or the drawer of the check. Neither of these theories was sufficient for declaratory relief, under the authorities above cited.

Heller v. Shapiro, supra, 208 Wis. 310, 242 N. W. 174, 87 A. L. R. 1201, was a suit under the Uniform Declaratory Judgments Act. The plaintiffs, who had guaranteed payment of the first mortgage asked the court to declare that they were subrogated to its lien ahead of the lien of the second mortgagee. No point was made as to the sufficiency of the complaint. The trial court decreed that "if, as and when" plaintiffs paid the first mortgage they would be subrogated to its lien. But the Supreme Court held that plaintiffs had "no present right," "right to subrogation does not accrue until payment is made", 208 Wis. 310, 242 N. W. 176, 87 A. L. R. 1204, and the judgment should be reversed and the suit dismissed because the complaint stated no case for declaratory relief.

This decision, we think, is quite persuasive because it was under the same act as ours, Code secs. 8835-8847, and was rested largely on the authority of our cases: Hodges v. Hamblen County, 152 Tenn. 395, 277 S. W. 901; Newsum v. Interstate Realty Co., 152 Tenn. 302, 278 S. W. 56; McFarland v. Crenshaw, 160 Tenn. 170, 22 S. W. 2d 229; Nashville Trust Co. v. Dake, 162 Tenn. 356, 36 S. W. 2d 905.

So we hold that the bill and its supplement stated no cause for declaratory relief, conferred no jurisdiction upon the court, and the demurrers should have been sustained. This leaves to be disposed of the case made by the cross-bill, which did set up an accrued right, state a good cause of action and confer jurisdiction upon the court.

A large amount of proof was taken as to the transaction beween Olive and David L. Carver. We need not review that proof in detail. Most of it is irrelevant to the question of the right of the Carvers to recover against the bank. We think the preponderance of the evidence does show that Olive made material misrepresentations of fact as to the condition of the boat, and that Carver as between them had a right to rescind the sale or to recover for a breach of warranty. But irrespective of whether he had such right, he had the right as between himself and the bank to countermand the check and require the bank to stop payment of it.

The relation between the bank and the Carvers was not only that of debtor and creditor but also that of agent and principal. The bank owed them the duty of loyalty which every agent owes its principal. It had not accepted or certified the check, and it owed no duty to the payee Olive. The check did not operate as an assignment of any part of the Carvers' funds in the bank, and the bank was not liable to the holder of it. Negotiable Instrument Act, sec. 189, Code sec. 7513.

The check was merely an order or authority to the bank for the payment of the Carvers' funds as therein directed. They had the right to revoke that order, withdraw the authority, and stop payment of the check at any time before the bank had certified, accepted, or paid

it. There was nothing in the deposit contract between the bank and them as to how the stop-payment-order should be given. It could be in writing, oral, by telephone, or in any other form which conveyed to the bank definite instructions not to pay the check. Shude v. American State Bank, 263 Mich. 519, 248 N. W. 886, 88 A. L. R. 736; see cases in Annotations, 88 A. L. R. 741; 11 Br. Rul. Cas. 1095, 1104; 7 Am. Jur., Banks sec. 605; 9 C. J. S., Banks and Banking, sec. 344, pp. 694-695.

We think there can be no question as to the sufficiency of the stop-payment-order in this case. The bank itself accepted it and treated it as sufficient. Mrs. Carver, on behalf of both herself and her son David L. Carver, gave this order by telephone to the bank about 8:15 A. M., some three hours before the check was presented. This order was accepted by Mr. Booker, the bank's Information teller and "general trouble shooter." He testified quite frankly that he accepted the order, told Mrs. Carver he would put it into effect at once, but asked her to write the bank a letter so it would have "something to show," or, as she said, "just for the bank's protection."

He issued the stop-payment-order immediately and gave it to all the tellers by about 8:45 A. M. The check was not presented until 10:30 or 11:00 A. M. that day but it was paid about that time. There is no explanation of how or why that was done. Also about that time Mrs. Carver brought the letter to the bank. The stop-order, as stated, had already been accepted and put into effect and was in nowise dependent upon this letter. Nor was this letter a waiver of the stop-order. Hiroshima v. Bank of Italy, 78 Cal. App. 362, 248 P. 947; Sarantopoulos v. Mid-City Trust & Sav. Bank. 222 Ill. App. 24.

Thus the undisputed proof shows that the bank

by its duly authorized agent treated the telephone stop-order as sufficient, accepted it, led Mrs. Carver to believe it would be enforced, and actually put it into effect, but later somehow disregarded it. In these circumstances we think the bank cannot be heard to deny the validity of the stop-order. In paying the check in disregard of the stop-order the bank was guilty of a breach of duty to its depositors and is liable to them for the amount of the check it thus wrongfully paid. Pease & Dwyer v. State National Bank, 114 Tenn. 693, 88 S. W. 172; Shude v. American State Bank, supra; Hiroshima v. Bank of Italy, supra; Carroll v. South Carolina Nat. Bank, 211 S. C. 406, 45 S. E. 2d 729; Annotation, 11 Br. Rul. Cas. 1095.

The Chancellor's decree is reversed and a decree will be entered in this Court for Mrs. A. P. Carver and David L. Carver against the bank for $500, with interest since the date of the filing of the cross-bill, and all the costs of the cause. After the bank has satisfied this decree it may, if it wish, have an order withdrawing the check from this record in order that it may pursue its remedies for reimbursement, as it may be advised.

Howell and Hickerson, JJ., concur.