# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 24, 2013 Session

## ISLAND PROPERTIES ASSOCIATES v. THE REAVES FIRM, INC., d/b/a REAVES, SWEENEY, AND MARCUM, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005755-03      Karen Williams, Judge**

---

**No. W2012-00202-COA-R3-CV - Filed March 6, 2013**

---

This is a surveyor negligence case. Appellee developer filed suit against Appellant surveyor, claiming two distinct acts of negligence on surveyor's part. The first claim of negligence involved an error allegedly made by surveyor in a 1993 survey. The second claim of negligence involved Appellee's claim that, upon discovering the 1993 survey error in a subsequent survey that it performed in 2002, surveyor had a duty to inform Appellee of the error. We conclude that any negligence arising from the 1993 survey claim is barred by the statute of repose, Tennessee Code Annotated Section 28-3-114(a). Despite Appellant's numerous motions to exclude this cause of action as time barred, the trial court ultimately allowed the 1993 negligent survey claim to be tried to the jury. The jury was then instructed as to both claims of negligence and the jury returned a verdict, wherein it found Appellant surveyor to be forty percent at fault and awarded damages in favor of Appellee. Appellant surveyor appeals. Because the jury was improperly instructed and was allowed to consider the time-barred claim of negligence, we conclude that the jury was mislead by the instructions. Accordingly, we vacate the judgment on the jury verdict and remand for a new trial. Vacated and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

William M. Jeter and Meredith A. Lucas, Memphis, Tennessee, for the appellant, The Reaves Firm.

Richard Glassman, and Lewis W. Lyons, Memphis, Tennessee, for the appellee, Island Properties Associates.

# OPINION

Appellee Island Properties Associates ("IPA," or "Appellee") is a Tennessee General Partnership consisting of Henry Turley and Brooks Road Associates, an entity of Belz. IPA is engaged in the business of real estate development, management and ownership. Appellant The Reaves Firm, Inc. ("Reaves" or "Appellant") is a Tennessee corporation engaged in the business of real estate surveying and engineering.

In 1988, IPA purchased 137 acres of undeveloped land on what is now known as Harbor Town on Mud Island in Memphis. IPA's development plan involved numerous phases, which spanned some thirty years to completion. IPA's Development Director on this project was Tony Bologna. At the time IPA was developing the phases at issue in this appeal, one of its attorneys was Keith Novick.

The development phases were not all started at the same time. Rather, IPA tackled phases gradually, allowing itself flexibility to modify the phases as the development grew. When IPA wanted to start or change a phase, Reaves would create a plat, which would then be recorded by IPA. IPA would then convey individual lots within the phase to purchasers, with IPA retaining ownership of the neutral areas within the various phases, in part so that it could adjust boundary lines of the phases at a later date if needed. In drafting plats, Reaves worked closely with Mr. Bologna. Often, Mr. Bologna would instruct Reaves to draft a phase initially, with the intention that the plat would be modified numerous times as plans developed.

The property that is disputed in this case concerns an area in the original Phase 11 (i.e., as evidenced by Reaves' initial survey) and the final Phase 11 (i.e., as represented on later modifications of the initial Phase 11 survey). The original Phase 11 was created in 1992 and involved a layout for a dockominium and marina on the west shore of Mud Island. A dockominium is a series of boat slips on a dock that can be sold individually. Under the Tennessee Horizontal Property Act, Tennessee Code Annotated Section 66-27-101, *et seq.* (which is not the subject of this appeal), dockominiums are governed by the same rules as condominiums.

IPA built the dockominium on the water next to the shore of Phase 11, but opted (at that time) not to proceed with other planned amenities such as a marina, boat store, and restaurant. As Mr. Turley states in his testimony, IPA intended to convey each of the boat slips to individual buyers and to create only the dock as a common area. Mr. Novick was charged with preparing the deeds. On October 26, 1992, Mr. Novick sent a letter to Mr. Turley, outlining his intentions to prepare a master deed. Mr. Novick then requested that Reaves prepare an exhibit showing all of the boat slip numbers on the plat. In a second letter,

dated January 4, 1993, Mr. Novick suggested that Reaves use the same plat drawing that it had prepared to establish the original Phase 11, and to merely insert the numbers on the individual dock slips. It is important to note that the Reaves firm was not directly involved with the preparation of the master deed; rather, it was only involved in rendering the exhibits to that deed, including a property description and survey (the "1993 Survey"). On March 16, 1993, Mr. Novick recorded the master deed on behalf of IPA, establishing the dockominium as a Tennessee Horizontal Property Regime.

Although IPA's intention was to transfer only the boat slips, the testimony at trial reveals that, in contravention of that intention, the master deed converted the entire Original Phase 11 into a Tennessee Horizontal Property Regime, such that the purchaser of each boat slip was granted not only the intended boat slip and interest in the dock, but was also granted an undivided two percent (2%) interest in the land on the hillside above the shore (the "disputed property") as a common element. Both Messrs. Turley and Bologna testified that it was never IPA's intention to convey the hillside property to the boat slip purchasers. This lawsuit involves, *inter alia*, IPA's assertion that the disputed property was erroneously transferred to the boat slip purchasers because IPA relied upon the 1993 Survey prepared by Reaves, which allegedly included the disputed property in error.

Shortly after recording the master deed in 1993, IPA began selling marina condominium boat slips to various private individuals, who are not parties to this appeal. As is relevant to this lawsuit, the warranty deeds executed by IPA in favor of these individuals included an undivided interest in the disputed property. In all, thirty-eight of the fifty slips were sold to third party owners.

Around 2001, as the project development continued, Mr. Bologna began to focus on Phase 21 of the project, which would be located southwest of the original Phase 11. Phase 21 involved the development of residential properties, including two condominium buildings, The Regatta and The Beacon, and twelve cottages. IPA again hired Reaves to prepare a survey of the property to be included in the Regatta and Beacon developments. Reaves prepared a second survey (the "2002 Survey"). The 2002 Survey was incorporated into the Final Plat for Phase 21. At some point during the process, it became apparent that the 2002 Survey for Phase 21 overlapped with the original Phase 11, i.e., the 1993 Survey. Mr. Bologna realized that the original Phase 11 would need to be modified in order for Phase 21 to be completed as planned. As noted above, it was IPA's intention to retain the right to make those modifications. Reaves prepared and amended final Phase 11 and Phase 21 as it was instructed to do by Mr. Bologna.

The 2002 Survey was submitted to Lawyer's Title Insurance Company ("Lawyer's Title") for the purpose of preparing a title search setting forth the chain of title on the

property to be included in the Beacon and Regatta developments. Lawyer's Title allegedly searched the title of the property only back to the issuance of the mortgagee's title insurance policy as part of the development in 1999. Therefore, the October 3, 2002 title policy that Lawyer's Title issued only covered property south of Phase 11 and, therefore, the search did not include the title history of Phase 11. Consequently, the master deed, setting forth the common elements of the marina condominium was not included in the title search. Allegedly, neither Reaves, nor Lawyer's Title, informed IPA of the problem with the disputed property and IPA began construction on the Beacon and Regatta developments.

On or about February 3, 2003, Mike Williams, one of IPA's lawyers, became aware of the language in the 1993 master deed for the dockominium that was created by Mr. Novick. The discovery revealed that the master deed had conveyed the land to the west, above the shoreline in the original Phase 11, i.e., the disputed property, to the boat slip purchasers as a common element. Part of the Beacon and four of the cottages were located on this portion of property. IPA had already begun construction of these buildings, which had been contracted through Patton & Taylor. On or about May 30, 2003, IPA ordered Patton & Taylor to cease all work on the Beacon and the cottages until the disputed property could be settled. IPA subsequently negotiated settlement with all of the marina slip owners, whereby IPA essentially repurchased the disputed property that was unintentionally conveyed and the slip owners re-deeded the portions of the disputed property back to IPA.

On October 13, 2003, IPA filed suit against Reaves and Lawyer's Title.[1] Concerning Reaves, the original complaint states:

> Defendant The Reaves Firm . . . negligently conducted a survey of the property at issue and negligently failed to detect that a portion of the property had been previously deeded to the

---

[1] IPA and Lawyer's Title ultimately reached a settlement agreement. On June 30, 2011, the trial court entered a consent order, dismissing IPA's claims against Lawyer's Title with prejudice. Lawyer's Title is not a party to this appeal. Despite this fact, we note that the appellate record contains numerous filings and transcript sections that relate solely to IPA's case against Lawyer's Title. The problem with including extraneous filings in the record is that it places upon this Court a duty that falls to the Appellant—to **prepare** a correct and complete record on appeal. Tenn. R. App. P. 24(b). In making that record, the Appellant should, of course, adhere to the mandates contained in Tennessee Rule of Appellate Procedure 24(a), but should also endeavor to tailor the record to include only the filings that are necessary based upon the parties to the appeal and the issues specific to those parties. It is too often the case that appellants simply include every filing made in the trial court in the appellate record. This practice is not in keeping with the spirit of the Rules of Appellate Procedure and the role of the Appellant in that process. This Court endeavors to file its opinions in a timely manner; however, when placed in the position of having to review volumes of extraneous, unnecessary, and irrelevant filings, our goal is hindered and the interests of judicial economy are stymied.

Marina at Harbortown condominium owners association in 1993. The actions of Defendant the Reaves Firm, Inc. in performing this negligent survey deviated from the acceptable standard of care expected of a similarly situated engineering and/or surveying firm in Memphis, Shelby County, Tennessee. The Defendant's negligence, failures and omissions were a direct and proximate cause of substantial monetary injury, los[s] and damage to IPA.

On January 12, 2004, the Reaves firm filed an answer, denying the material allegations made in the complaint and raising, as a defense, the expiration of the statute of repose. On or about October 19, 2007, Reaves filed a motion for summary judgment, relying, *inter alia*, upon the statute of repose. In its response in opposition to Reaves' motion for summary judgment, IPA argues, *inter alia*, that its claims of negligence are based not only on the 1993 Survey conducted by Reaves, but also on the 2002 Survey that was prepared in contemplation of Phase 21, *supra*. IPA's response specifically states:

> IPA's second allegation of negligence on the part of Reaves is based on Reaves' acts or omissions that occurred after 1999 . . . . IPA hired Reaves to prepare and Reaves did in fact prepare a survey of the property to be included in [the Beacon and Regatta developments] . . . .

> Reaves failed to notify IPA. . .that Phase 21 included part of Phase 11 which was owned not by IPA but by the Marina Association. . . .

Reaves argued that IPA had failed to aver any negligence arising from the 2002 survey in its original complaint. IPA then moved the trial court for permission to amend its complaint, which motion was granted over Reaves' objection. IPA filed its amended complaint on or about July 9, 2008. The amended complaint avers that Reaves was not only negligent in its preparation of the 1993 Survey, but that it was also negligent in connection with the 2002 Survey prepared for Phase 21:

> 15. The second negligent survey(s) performed by . . . The Reaves Firm . . . and submitted to . . . Lawyer's Title included the "disputed property" and the master tract as being owned by IPA. Defendant, Lawyer's Title, through its agents and employees, negligently failed to discover the 1993 conveyance of the "disputed property" and negligently instructed the title search attorney to beg[i]n the title search

starting in 1999.

Reaves answered the amended complaint on January 13, 2011, denying the allegations contained in Paragraph 15, *supra*. In addition to denying the material allegations made against it, Reaves' answer to the amended complaint again raises the defense of the expiration of the applicable statute of limitations and/or repose.

The case was tried to a jury on January 18 through February 3, 2011. At the close of IPA's proof, Reaves moved for a directed verdict, which motion was denied. At the close of all proof, Reaves renewed its motion for a directed verdict. The trial court declined to rule on the motion until after the jury had returned a verdict. After deliberating, the jury returned a general verdict form, apportioning forty percent (40%) of fault to Reaves, fifty percent (50%) of fault to Lawyer's Title, and ten percent (10%) of fault to IPA. On February 18, 2011, the trial court entered judgment on the jury verdict, awarding IPA a judgment against Reaves in the amount of $345,533.26. On March 21, 2011, Reaves filed a motion for new trial. On November 30, 2011, the trial court entered separate orders, denying both the motion for directed verdict and the motion for new trial. Reaves filed a notice of appeal on December 29, 2011.

Reaves raises the following issues as stated in its brief:

> 1. Whether a defendant surveyor is entitled to judgment as a matter of law when the plaintiff failed to produce any expert testimony establishing the professional standard of care and breach of the standard?
>
> 2. Whether a plaintiff has standing to claim and recover damages which were suffered by non-parties?
>
> 3. Whether the statute of repose under Tenn. Code Ann. §28-3-114 is tolled for claims of negligence relating to a nine year old survey, when there are allegations of a separate subsequent negligent act?
>
> 4. Whether a joint-tortfeasor may recover attorney fees under an independent tort theory of law?[2]

---

[2] We note that these issues were properly raised in Reaves' Motion for New Trial. *See* Tenn. R. App. P. 3(e) (requiring that issues on appeal from a jury verdict be specifically raised in a motion for new trial).

(continued...)

These issues require us to determine whether the trial court erred in denying Reaves' motion for directed verdict and/or new trial. Our review of a trial court's decision regarding a post-trial motion for entry of judgment in accordance with a motion for a directed verdict is gauged by the standard applicable to motions for a directed verdict. *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). Directed verdicts are appropriate only when reasonable minds cannot differ as to the conclusions to be drawn from the evidence. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Ingram v. Earthman*, 993 S.W.2d 611, 627 (Tenn. Ct. App. 1998). A case should not be taken away from the jury, even when the facts are undisputed, if reasonable persons could draw different conclusions from the facts. *Gulf, M. & O.R. Co. v. Underwood*, 187 S.W.2d 777, 779 (Tenn. 1945); *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). A trial court may, however, direct a verdict with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's.

In appeals from a decision on a directed verdict, reviewing courts do not weigh the evidence, *Conatser v. Clarksville Coca–Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992), or evaluate the credibility of the witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638–39 (Tenn. Ct. App. 1993). Instead, they review the evidence in the light most favorable to the motion's opponent, give the motion's opponent the benefit of all reasonable inferences, and disregard all evidence contrary to that party's position. *Alexander v. Armentrout*, 24 S.W.3d at 271; *Eaton v. McLain*, 891 S.W.2d at 590; *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 199 (Tenn. Ct. App. 1999). A trial court may, however, direct a verdict with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's.

### Statute of Repose

As set out in full context above, IPA's amended complaint states two distinct causes of action for negligence against Reaves. First, IPA claims negligence in Reaves' performance of the 1993 Survey, i.e., that Reaves' performance fell below the applicable standard of care for surveyors. The second cause of action involves Reaves' alleged failure to inform IPA of the overlap between the 1993 Survey and the 2002 Survey, i.e., when Reaves realized (or should have realized) that the 2002 Survey did not match with the 1993 Survey, Reaves had a duty to reveal that problem to IPA. When Reaves failed to reveal the problem, IPA claims that it was negligent.

---

[2](...continued)

Because the claims against Reaves arise from survey work it performed, Tennessee Code Annotated Section 28-3-114(a) applies to all claims. The statute provides:

> (a) All actions to recover damages against any person engaged in the practice of surveying for any deficiency, defect, omission, error or miscalculation shall be brought within four (4) years from the date the survey is recorded on the plat. Any such action not instituted within this four (4) year period shall be forever barred. The cause of action in such cases shall accrue when the services are performed.

*Id*.

In *Wannamaker v. Thaxton*, No. M2010-01009-COA0-R3-CV, 2011 WL 1087913 (Tenn. Ct. App. Mar. 24, 2011), this Court concluded that "[t]he obvious intent of the legislature was to place all limits on actions against surveyors into the new statute [i.e., Tennessee Code Annotated Section 28-3-114]." *Id*. at *2–3. Consequently, whether IPA's causes of action against Reaves stem from failure to disclose or from faulty surveying, all of the claims are governed by the limitations period set out at Tennessee Code Annotated Section 28-3-114.

In *Douglas v. Williams*, 857 S.W.2d 51 (Tenn. Ct. App. 1993), perm. app. dismissed (Tenn. May 14, 1993), this Court held:

> [A]s used in T.C.A. § 28-3-114, the words, "recorded on the plat" mean the production of some drawing or written instrument evidencing the results of a survey. It appears that the legislative intent was to provide that the statute did not begin to run until some written or drafted statement was produced by the surveyor.

*Id*. at 54.[3]

---

[3] The *Douglas* Court also noted:

> The statute refers to "faulty surveying." Surveying is a derivative of the verb "survey" which means, "of land, to ascertain corners, boundaries, divisions, with distances and directions . . . ." Black's Law Dictionary, Fourth Ed., p. 1614.
> The noun "survey" means "the process by which a parcel of land is measured and its contents ascertained; also a statement of the result of such survey, with the courses and distances and the quantity of the land."

(continued...)

In ***Meredith v. Crutchfield Surveys***, No. E2004-02460-COA-R3-CV, 2005 WL 1798773 (Tenn. Ct. App. July 28, 2005) perm. app. denied (Tenn. Dec. 5, 2005), this Court specifically held that Tennessee Code Annotated Section 28-3-114 is a statute of repose:

> The defendants argue that Tenn. Code Ann. § 28-3-114 is a statute of repose and not a statute of limitations. We agree. The statute refers to a specific event, i.e., "the date the survey is recorded on the plat," as to when the start of the four-year time period is triggered. Lest there be a doubt about that which triggers the beginning of the applicable time frame, the statute provides that "[t]he cause of action in such case shall accrue when the services are performed." In ***Wyatt v. A-Best Products Co., Inc***., 924 S.W.2d 98, 102 (Tenn. Ct. App. 1995), we noted that a statute of repose, generally speaking, refers to a specific event as the triggering event rather than referring to the triggering event as the time when the cause of action "accrues" without further descriptive language. ***Id***. A statute employing the general language of "accrues," without more, generally signals that the statute is one of limitations. ***Id***.

***Meredith***, 2005 WL 1798773 at *3.

In ***Dale v. B & J Enterprises***, No. E2011-01790-COA-R9-CV, 2012 WL 1655778 (Tenn. Ct. App. May 10, 2012),[4] this Court acknowledged the holding in ***Meredith***, i.e., that

---

[3](...continued)
> ***Ibid***. p. 1615.
>    A "plat" or "plot" is "a map, or representation on paper, of a piece of land subdivided into lots, . . . usually drawn to scale." ***Ibid***. p. 1309.
>    The verb, "record," means "to commit to writing, to printing, to inscription, or the like, to make an official note of, to write, transcribe, or enter in a book or on parchment, for the purpose of preserving authentic evidence of, . . . ." ***Ibid***. p. 1437.

***Id***. at 54.

[4] In ***Dale***, Appellant homeowners filed suit against Appellee surveyor after discovering sink holes on their respective properties. Appellee surveyor moved for dismissal on the ground that the claim was time-barred under Section 28-3-114(a). The trial court dismissed the case and this Court granted an interlocutory appeal to address, *inter alia*, the issue of whether Appellants' claims were timely under Tennessee Code Annotated section 28-3-114 when the claims were brought within four
(continued...)

the surveyor statute is one of repose and not limitations, but ultimately held that the distinction did not matter based upon the plain language of the statute:

> [W]e find that it is immaterial whether section 28-3-114 is labeled a statute of limitations or a statute of repose. The statute clearly provides that all actions against persons engaged in the practice of surveying "shall be brought within four (4) years from the date the survey is recorded on the plat." Tenn. Code Ann. § 28-3-114(a). "Any such action not instituted within this four (4) year period shall be forever barred. The cause of action in such cases shall accrue when the services are performed." *Id*. Plaintiffs' claims against Benchmark [i.e., the surveyor] were not brought within four years of the date when the services were performed. Therefore, Plaintiffs' claims are time-barred regardless of whether we label this statute as one of repose, or as a statute of limitations that commences to run when the survey is recorded. Plaintiffs argue that if section 28-3-114 is a statute of limitations, then the discovery rule would toll the running of the statute of limitations until they knew or should have known about their injury. However, we reject Plaintiffs' suggestion that the discovery rule would automatically apply if the statute is construed as one of limitations. "The concept of accrual relates to the date on which the applicable statute of limitations begins to run." *Redwing v. Catholic Bishop for Diocese of Memphis*, ——S.W.3d ——, 2012 WL 604481, at *16 (Tenn. Feb. 27, 2012) (citing *Columbian Mut. Life Ins. Co. v. Martin*, 175 Tenn. 517, 526, 136 S.W.2d 52, 56 (1940)). Under the traditional accrual rule, a cause of action accrues and the applicable statute of limitations begins to run when the plaintiff has a cause of action and the right to sue, even though the person has no knowledge of his right to sue. *Id*. Accordingly, under the traditional accrual rule, the cause of

---

[4](...continued)
years of **discovery** of the injury. In arguing this issue, the parties disputed whether Tennessee Code Annotated Section 28-3-114 is a statute of limitations or a statute of repose. Appellants argued that the statute should be construed as a statute of limitations that is subject to the discovery rule, so that their cause of action did not accrue until they discovered the sink holes in late 2008. In that event, Appellants argued, their 2010 complaint naming the surveyor as a defendant would have been timely. The surveyor argued that section 28-3-114 is a statute of repose.

action accrued in personal injury cases 'immediately upon the infliction or occurrence of [the] injury.'" *Id*. (quoting *Teeters v. Currey*, 518 S.W.2d 512, 515–16 (Tenn.1974)). In 1974, our Supreme Court recognized and adopted the discovery rule in the context of medical malpractice to hold that "the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury." *Id*. Since then, the Court has expanded the application of the discovery rule to many other injuries to persons or property, but it has also declined to apply the discovery rule to certain types of claims. *Id*. Because Tennessee Code Annotated section 28-3-114 expressly states that a cause of action against surveyors "shall accrue when the services are performed," we conclude that the discovery rule is inapplicable to such claims. *See* *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002) (instructing courts to consider the specific statutory language at issue when determining whether to apply the discovery rule).

*Dale*, 2012 WL 1655778 at *6 (relying on *Wannamaker v. Thaxton*, No. M2010-01009-COA-R3-CV, 2011 WL 1087913 (Tenn. Ct. App. Mar. 24, 2011)) (footnote omitted).

### 1993 Survey

IPA's first claim of negligence against Reaves arises strictly from the 1993 Survey. Specifically, in its amended complaint, as set out in full context above, IPA avers that Reaves "negligently conducted a survey of the property at issue and negligently failed to detect that a portion of the property had been previously deeded to the Marina at Harbortown condominium owners association in 1993." IPA asserts that the actions of Reaves in performing the 1993 Survey "deviated from the acceptable standard of care expected of a similarly situated engineering and/or surveying firm in Memphis, Shelby County, Tennessee."

We need not reach the substantive requirements to sustain a negligence claim against a surveyor because it is undisputed in the record that the 1993 Survey was "recorded on the plat" (as that term is defined by the *Douglas* Court, *supra*) sometime in early 1993 (i.e., before the March 1993 filing of the Master Deed). IPA filed its lawsuit on October 13, 2003. Because the question of discovery of the alleged error in the 1993 Survey does not function to toll the running of the statute of repose, *see* discussion above, under the plain language of

-11-

the statute, "[a]ny such action not instituted within this four (4) year period [from the date the survey is "recorded on the plat"] shall be forever barred." Accordingly, IPA's first claim of negligence against Reaves, which stems from the alleged negligence in the 1993 Survey, is clearly time-barred. Accordingly, the trial court should have dismissed IPA's claim of negligence based upon the 1993 Survey.

On the other hand, any liability arising from Reaves' alleged negligence directly related to the 2002 Survey is not time-barred under the statute of repose. The lawsuit was filed on October 13, 2003, so any negligence arising in 2002 would be within the four year statutory period. However, we cannot overlook the fact that the trial court allowed both the time-barred 1993 Survey negligence claim, and the 2002 Survey negligence claim to be tried to the jury. The question, then, is whether the jury was mislead by the erroneous inclusion of the 1993 negligence theory, in such a way as to render its results uncertain or flawed. We now turn to address that question.

## Jury Instructions

In the instant case, the jury was instructed, in relevant part, as follows:

> Plaintiff Island Properties claims that Defendant Reaves Firm was negligent in providing legal descriptions. Plaintiff Island Properties further alleges that Defendant Reaves Firm failed to detect that a portion of the property in Phase 21 had already been conveyed to the marina slip owners causing Plaintiff to incur damages.

It is the trial court's duty to instruct the jury on "every factual issue and theory of the case presented by the parties." ***Ricketts v. Robinson***, 169 S.W.3d 642, 646 (Tenn. Ct. App.2002) (citing ***Cole v. Woods***, 548 S.W.2d 640, 642 (Tenn.1977)). Our standard for reviewing a trial court's jury charge is as follows:

> We review the jury charge in its entirety to determine whether the trial judge committed reversible error. Jury instructions are not measured against the standard of perfection. The charge will not be invalidated if it "fairly defines the legal issues involved in the case and does not mislead the jury." Furthermore, a particular instruction must be considered in the context of the entire charge.

*Id*. (citing ***City of Johnson City v. Outdoor West, Inc.***, 947 S.W.2d 855, 858 (Tenn. Ct. App.

1996). Whether a jury instruction is erroneous is a question of law and is, therefore, subject to *de novo* review with no presumption of correctness. ***Solomon v. First Am. National Bank of Nashville***, 774 S.W.2d 935, 940 (Tenn. Ct. App. 1989). The legitimacy of a jury's verdict is dependent on the accuracy of the trial court's instructions, which are the sole source of the legal principles required for the jury's deliberations. Therefore, a trial court is under a duty to impart "substantially accurate instructions concerning the law applicable to the matters at issue." ***Hensley v. CSX Transp., Inc.***, 310 S.W.3d 824, 833 (Tenn. Ct. App. 2009) (quoting ***Bara v. Clarksville Mem'l Health Sys., Inc.***, 104 S.W.3d 1, 3–4 (Tenn. Ct. App. 2002)). When considering whether a trial court committed prejudicial error in a jury instruction, it is our duty to review the charge in its entirety and to consider it as a whole. The instruction will not be invalidated if it "fairly defines the legal issues involved in the case and does not mislead the jury." ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 446 (Tenn.1992). The judgment of a trial court will not be set aside based on an erroneous jury instruction unless it appears that the erroneous instruction more probably than not affected the judgment of the jury. Tenn. R. App. P. 36(b); ***Gorman v. Earhart***, 876 S.W.2d 832, 836 (Tenn.1994).

Although IPA states two distinct causes of action for negligence on the part of Reaves, one of the problems with this case is that those two theories were never treated as completely separate acts. Rather, the theories are interwoven in the record and, as such, it is impossible to determine what portion of the fault the jury assigned to Reaves as a direct result of the 1993 Survey error and what, if any, portion was assigned for the 2002 Survey. As noted above, the jury returned a general verdict form, wherein it simply assigned the percentages of fault among the parties without any explanation as to how it arrived at those percentages. However, we have determined that any negligence flowing from the 1993 Survey is time-barred. If the record and instructions were such that the jury could clearly distinguish between the acts of negligence and the respective damages arising therefrom, then this Court might be in a position to discount the fault and damages arising from the 1993 survey error and review the damages, if any, attributable to any negligent acts surrounding the 2002 Survey. However, that is not the case here.

Instead, it is clear that the trial court erred in failing to dismiss any claim of negligence arising from the 1993 Survey. Accordingly, there can be no doubt that the jury was erroneously allowed to consider negligence arising from the 1993 Survey. In this regard, the jury instructions do not "fairly define[] the legal issues involved in the case . . . ." ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 446 (Tenn. 1992). The 1993 Survey error was not a proper legal issue in the case because it was time-barred. Therefore, when the jury was allowed to hear evidence on this theory and was further allowed to consider the 1993 negligent act, it was mislead on the proper theory of the case. Because we cannot separate the two acts of negligence after the fact, and because there can be no doubt that at least a portion of the fault and damages found by the jury resulted from the 1993 negligent act

-13-

(although what portion is not ascertainable in the record), the fact that the jury was allowed to consider the 1993 Survey negligence was reversible error, requiring a new trial.

Having determined that the claim of negligence arising from the 2002 Survey must be remanded to the trial court, the remaining issues raised by Appellant are ostensibly rendered moot as they arise from the first trial, which is void. It is uncertain how the parties will choose to try this case on remand. It is not the purview of this Court to engage in the rendering of advisory opinions on hypothetical facts. *Third Nat'l Bank v. Carver*, 218 S.W.2d 66, 69 (Tenn. Ct. App. 1948). Therefore, we decline to consider the remaining issues raised by Appellant, as the issues concern alleged errors that occurred in the first trial, but remain only contingent possibilities in any future trial. The parties are free to raise these issues, should they again become relevant, at the new trial on this cause.

For the foregoing reasons, the judgment on the jury verdict is vacated and the case is remanded for a new trial. Costs of this appeal are assessed against the Appellee, Island Properties Associates, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE