IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 21, 2014 Session

**LISA HOWE, ET AL. V. BILL HASLAM**

**Appeal from the Chancery Court for Davidson County**
**No. 11778II     Carol L. McCoy, Chancellor**

No. M2013-01790-COA-R3-CV - **Filed November 4, 2014**

W. NEAL MCBRAYER, J., concurring in part.

I agree with Judge Farmer's conclusion that the claims arising from HB600's reordering of the political process, which strips Appellants of the ability to seek anti-discrimination protections at the local level, should be dismissed. However, because I find the United States Supreme Court precedent in *Romer v. Evans*, 517 U.S. 620 (1996), difficult to distinguish by reference to the structural barrier it imposes, I write separately. I would instead distinguish *Romer* because, unlike the amendment at issue there, the burden HB600 imposes applies equally to any group seeking protected status. Therefore, Appellants have not suffered a particularized injury sufficient to confer standing.

I also depart from Judge Farmer in that I find that there is a sufficient case or controversy so that the Gay Straight Alliance of Hume Fogg Academic Magnet High School ("GSA-HFA") may proceed with a declaratory action to determine whether HB600 applies to Local Education Agencies.

## I. POLITICAL PROCESS CLAIMS

At issue is whether HB600's reapportionment of legislative power presents a justiciable controversy capable of resolution by the Court. HB600 strips local governments of the ability to create new, non-State recognized, protected classes through ordinance, resolution, or any other means. Although this prevents seeking protected status at a local level, local governments in Tennessee "have no authority other than that granted by the legislature and the legislature may remove or alter that authority as it chooses," within constitutional limits. *Nichols v. Tullahoma Open Door, Inc.*, 640 S.W.2d 13, 18 (Tenn. Ct. App. 1982). Article II, Section 3 of our Constitution vests all of the State's legislative power in the General Assembly, and with limited exception, "the General Assembly has the sole and plenary authority to determine whether, and under what circumstances, portions of that power

should be delegated to local governments." *Southern Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 711 (Tenn. 2001). States are "afforded wide leeway when experimenting with the appropriate allocation of state legislative power." *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 71 (1978). Against this widely recognized rule is the limited exception that state reapportionment of legislative power may be challenged where it offends the Equal Protection Clause. *See, e.g.*, *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 470 (1982).

Although standing was not an issue directly addressed by the Supreme Court in *Romer*, Judge Farmer finds that the *Romer* plaintiffs had standing because their ability to seek protective legislation was completely thwarted by Colorado constitutional Amendment 2. Judge Farmer then seeks to distinguish Appellants' political process claims by finding that, while HB600 does prevent LGBT advocacy at the local level, it does not erect a complete structural barrier as in *Romer*. I find this distinction to be untenable and respectfully disagree.

It is not clear from the Supreme Court's analysis in *Romer* that the structural barrier imposed by Amendment 2 was the sole basis for conferring standing. In discussing the *Romer* plaintiffs, the Supreme Court stated, "[a]mong the plaintiffs . . . were homosexual persons, some of them government employees . . . [who] alleged that enforcement of Amendment 2 would subject them to immediate and substantial risk of discrimination on the basis of their sexual orientation." *Romer*, 517 U.S. at 625. The Court further stated that "Amendment 2 bars homosexuals from securing protection against the injuries that [anti-discrimination laws] address . . . [t]hat in itself is a severe consequence, but there is more . . . Amendment 2, in addition, nullifies specific legal protections for this targeted class." *Id*. at 629. Although the Court may have relied on the complete structural barrier raised by Amendment 2 in conferring standing, it is possible the Court found allegations of an "immediate and substantial risk of discrimination" and the nullification of "specific legal protections," allegations mirrored by the Appellants here, sufficient to confer standing.

Furthermore, in light of the Supreme Court's other political process cases, it seems likely that even a partial barrier to LGBT advocacy may be sufficient to confer standing. *See Washington*, 458 U.S. 457; *Gordon v. Lance*, 403 U.S. 1 (1971); *Hunter v. Erickson*, 393 U.S. 385 (1969); *Reitman v. Mulkey*, 387 U.S. 369 (1967). In *Washington v. Seattle School District No. 1*, 458 U.S. 457 (1982), a Seattle school district adopted a plan to promote the desegregation of its schools. 458 U.S. at 461. In response, the State of Washington passed Initiative 350, which prevented school districts from bussing students for purposes of desegregation, although it contained broad exemptions to allow bussing for other reasons. *Id*. at 462. In *Hunter v. Erickson*, 393 U.S. 385 (1969), an amendment to the Akron City Charter required that any fair housing ordinance relating to discrimination must be passed

by a vote of the electorate at-large. 393 U.S. at 387, 389. However, other types of housing ordinances could be passed by the City Council. *Id.* Each of these cases found that even a partial structural barrier to the political process can constitute a violation of the Equal Protection Clause. *Seattle Sch. Dist. No. 1*, 458 U.S. at 487; *Hunter*, 393 U.S. at 393.

Because *Romer* relies on the Supreme Court's political process cases, 517 U.S. at 625, it must be interpreted in light of subsequent cases expounding upon the political process doctrine. The most recent articulation of the political process doctrine can be found in the Court's decision in *Schuette v. Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN)*, — U.S. —, 134 S. Ct. 1623 (2014). In *Schuette*, proponents of affirmative action brought suit against the Governor of Michigan and various boards of public universities after the passage of a State constitutional amendment that barred the consideration of race-based criteria in admissions decisions. 134 S. Ct. at 1629-30. The Court, in a plurality opinion, held that the political process doctrine stands for the proposition that the reapportionment of legislative power may be challenged only where a serious risk of "specific injuries from hostile discrimination [are] at issue." *Id.* at 1634.

Justices Scalia and Thomas joined the *Schuette* plurality insofar as its decision repudiated the political process doctrine handed down by *Reitman v. Mulkey*, 387 U.S. 369 (1967), and its progeny. *Id.* at 1640. Their concurrence noted that the Court's political process cases create a danger of swallowing the rule of state sovereignty, creating a situation where a state may permanently forfeit its ability to legislate over racial issues. *Id.* at 1646. They would return to the principle that, where a plaintiff brings an Equal Protection challenge against a facially neutral act, they must bear the burden of proving a disparate impact as well as a discriminatory purpose or intent. *Id.* at 1640.

The plurality's holding in *Schuette*, that a challenge to the reapportionment of legislative power must be accompanied by a risk of specific injury, is consistent with our general requirements for standing. Standing must be based on a particularized harm, rather than an injury that is shared by citizens of the State generally. *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006); *City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001) (refusing to confer standing on plaintiff where whatever harm he may have suffered was indistinguishable from the public at large); *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001).

Appellants' political process claims are insufficient to confer standing because their asserted injury lacks particularity. This case is unlike *Romer*, in which the amendment at issue specifically targeted the LGBT population. 517 U.S. at 624. As the Colorado Supreme Court noted in the litigation leading to *Romer*, "[r]ather than attempting to withdraw

antidiscrimination issues as a whole from state and local control, Amendment 2 singles out one form of discrimination and removes its redress from consideration by normal political process." *Evans v. Romer*, 854 P.2d 1270, 1285 (Colo. 1993). HB600 is more akin to the former situation, stripping local governments of the ability to create any new protected classes under State antidiscrimination legislation and placing that power in the hands of the General Assembly. While HB600 may prevent LGBT citizens from seeking protection under antidiscrimination laws at the local level, it imposes the same burden on any group that seeks such protection. Therefore, because Appellants are not at risk of any specific injury, I would find that their claims lack particularity and concur with Judges Farmer and Stafford's conclusion that they lack standing to pursue their political process claims.

## II. APPLICATION OF HB600 TO LOCAL EDUCATION AGENCIES

In regard to Mr. Roberts' and the GSA-HFA's claims concerning the application of HB600 to Local Education Agencies, I do not find the issue is moot. While Mr. Roberts has failed to show a sufficient injury to confer standing, I would allow GSA-HFA to proceed with the declaratory action to determine whether HB600 applies to Local Education Agencies. The difference in these two Appellants' claims lies in the fact that GSA-HFA has student members who could demonstrate a sufficient injury to confer standing whereas Mr. Roberts is seeking to assert standing on behalf of others.

The plaintiff in a declaratory judgment action is not required to demonstrate a present injury, but there must be an actual case or controversy. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 837-38 (Tenn. 2008). "A bona fide disagreement must exist; that is, some real interest must be in dispute." *Id*. at 838 (citing *Goetz v. Smith*, 278 S.W. 417, 418 (Tenn. 1925)). The prohibition from rendering advisory opinions applies even to actions for declaratory judgment. *Id*. (citing *Third Nat'l Bank v. Carver*, 218 S.W.2d 66, 69 (Tenn. Ct. App. 1948)). Justiciability doctrines such as standing, ripeness, mootness, and political question continue to apply to such actions. *Id*. (citing *Texas v. United States*, 523 U.S. 296, 300-01 (1998) (holding declaratory judgment action was not ripe); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 83 (1993) (finding declaratory judgment action moot)). An action for declaratory judgment may proceed only so long as there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant [it]." *Hatcher v. Chairman*, 341 S.W.3d 258, 261 (Tenn. Ct. App. 2009) (quoting *Evers v. Dwyer*, 358 U.S. 202, 204 (1958)).

Judge Farmer concludes that the issue is moot on the basis of the Governor's answer where he asserts, "HB600 does not apply to Local Education Agencies and does not overturn, prohibit, or affect school anti-discrimination or anti-bullying policies in any way." However, this assertion was made by the State in its Answer to the original Complaint, and as no

answer has been filed to Appellants' Amended Complaint, it is unclear whether the State still takes this position. *See In re Polichuk*, 506 B.R. 405, 440 n.37 (Bankr. E.D. Pa. 2014) ("Once a pleading is superceded [sic] by an amended answer or response, however, the admissions in the superceded pleading, as a general rule, lose their binding force."). In fact, some of the statements made by the State at oral argument suggest that it may have reversed its position on this issue. The State's argument before this Court did not suggest that HB600 was inapplicable to Local Education Agencies, but rather that HB600 did not invalidate anti-bullying policies because they were of general applicability. Moreover, when requested to stipulate to this construction of the statute, the Governor, through counsel, declined.

Regardless of whether the Governor agreed to stipulate to the applicability of HB600 to Local Education Agencies, his interpretation would not be binding on the State or any other governmental entity—including this Court. "[Q]uestions of law are not subject to stipulation by the parties to a lawsuit and . . . a stipulation purporting to state a proposition of law is a nullity." *Mast Adver. & Pub., Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993); *see also Hyneman v. Hyneman*, 152 S.W.3d 549, 555 (Tenn. Ct. App. 2003) ("Parties may stipulate to questions of fact or legal strategies but may not stipulate to questions of law."); *Cedyco Corp. v. Whitehead*, 253 S.W.3d 877, 880 (Tex. App. 2008) ("[A] request for admission asking a party to admit or deny a purely legal issue is improper, and a deemed admission involving a purely legal issue is of no effect."); *Wilson v. Ridgeway Area Sch. Dist.*, 596 A.2d 1166, 1168 (Pa. Commw. Ct. 1991) (finding that allegations related to issues of law do not constitute judicial admissions) ; *J. R. Meade Co. v. Forward Const. Co.*, 526 S.W.2d 21, 30 (Mo. Ct. App. 1975) (holding that the trial court is not bound by the parties admissions regarding questions of law). The proper construction of a statute is a task for the court, not parties to litigation.

Here, I find that the case or controversy requirement is satisfied with respect to GSA-HFA's request for a declaratory judgment on whether HB600 applies to Local Education Agencies. Furthermore, although there is some suggestion that the State may agree with Appellants' construction, such an agreement would not necessarily render the matter moot.

Insofar as Judge Farmer's opinion is meant to be its own construction of HB600, I decline to make such an interpretation as that issue is not before the Court. Therefore, because I conclude that the application of HB600 to Local Education Agencies presents a justiciable case or controversy, GSA-HFA's request for a declaratory judgment on the application of HB600 to Local Education Agencies should be remanded to the trial court for further proceedings.

_____
W. NEAL McBRAYER, JUDGE