IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 3, 2020 Session

## ROCHELLE YVONNE LILLARD v. ROBERT WALTER LILLARD

**Appeal from the Circuit Court for Davidson County**
**No. 98D-2123      Phillip E. Smith, Judge**

_____

### No. M2019-02305-COA-R3-CV

_____

This appeal arises from a post-divorce Petition to Modify Child Support and Declare Child to be Severely Disabled. After an evidentiary hearing, the court determined the parties' daughter had a severe disability and ordered the father to continue paying child support beyond the age of 21. The father raises three issues on appeal: (1) Did the trial court err in determining that the parties' daughter had a severe disability; (2) Did the trial court err in awarding child support beyond the age of 21 without making specific factual findings that the daughter was living under the care and supervision of the mother and it was in the daughter's best interest to remain in the mother's care; and (3) Did the trial court err in determining the amount of child support the father owed? We find the preponderance of the evidence supports the trial court's determination that the daughter has a severe disability, and it is in the daughter's best interest to remain in her mother's care. As for the amount of the child support award, the father primarily argues the daughter is underemployed; therefore, the court should have imputed additional income to her. We have determined that the trial court correctly identified and applied the relevant legal principles, the evidence supports the trial court's determination regarding the daughter's ability to earn income, and the award of child support is within the range of acceptable alternatives. Therefore, we affirm the trial court's decision in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

James L. Widrig, Nashville, Tennessee, for the appellant, Robert Walter Lillard.

Brenton Hall Lankford and Ann Ralls Brown, Nashville, Tennessee, for the appellee, Rochelle Yvonne Lillard.

**OPINION**

Rochelle Yvonne Lillard ("Mother") and Robert Walter Lillard ("Father") married in 1995 and had a daughter in 1997 ("Daughter"). In 1999, when Daughter was almost two years old, the Davidson County Circuit Court granted Mother and Father a divorce and designated Mother as the primary residential parent. The court granted Father visitation and ordered him to pay child support.

Daughter had difficulty in school and was placed in special education classes in the second grade. Following a psychological evaluation in 2011, Daughter was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and learning disabilities. Tests revealed Daughter had an I.Q. of 51 and a below average working memory and ability to process information. The psychologist also found deficiencies in math, applied skills, problem-solving, and written communication.

On October 29, 2015, when Daughter was still a minor, Mother filed a Petition to Modify Child Support and Declare Child to be Severely Disabled requesting that the court order Father to continue paying child support beyond 18 years of age "for such period as the Court deems in the best interest of the child." Alternatively, Mother asked the court to declare Daughter disabled, rather than severely disabled, and order Father to pay child support until Daughter reached 21 years of age. Father answered the petition in December 2015, denying Daughter had a severe disability.

In the meantime, Daughter continued with special education classes in high school and participated in cheerleading and dance. Tests conducted in 2016 revealed Daughter had an I.Q. of 68 and significant deficiencies in math, reading, and daily living skills, and a below average working memory. With the help of Brentwood Learning Center, Daughter graduated high school at the age of 18 in 2017.

While Mother's petition was pending, Father filed a motion to suspend child support due to Daughter's graduation from high school. The court granted Father's motion pending a hearing on Mother's Petition to Modify Child Support and Declare Child to be Severely Disabled.

On May 9, 2018, following partially successful mediation, the court entered an agreed order finding Daughter to be disabled in accordance with the Americans with Disabilities Act and ordered Father to pay child support in the amount of $468 every two weeks until Daughter reached 21 years old, reserving the issue of Daughter's severe disability for a final hearing. The court also found that Father owed Mother $10,608 in retroactive support to be paid in installments in the months following Daughter's 21st birthday.

In the interim, Mother filed a petition to appoint a conservator for Daughter. The petition was supported by Daughter's pediatrician, Nancy Beveridge, M.D., who

recommended the conservatorship for Daughter's benefit. Father did not oppose the conservatorship. In December 2018, the Seventh Circuit Court for Davidson County declared Daughter to be a disabled person and appointed Mother as Daughter's conservator of the person and property for Daughter.[1] Specifically, the court determined:

> Respondent requires a fit and proper person to be Conservator over her person and property and to make all healthcare and financial decisions. Pursuant to the provisions of Tenn. Code Ann. § 34-1-126, this Court finds by clear and convincing evidence that the Respondent is fully or partially disabled as defined by Tenn. Code Ann. § 34-1-101(7) and that the Respondent is in need of assistance from this Court.

The court granted Mother the right to, *inter alia*, pay Daughter's bills and protect and invest her assets, make purchases, enter contractual relationships, apply for benefits, and give consent relative to medical treatment.

The evidentiary hearing on Mother's Petition to Modify Child Support and Declare Child to be Severely Disabled was held on July 2 and July 3, 2019. Several documents were admitted into evidence at the hearing in accordance with an agreed order: (1) the 2011 and 2016 psychological evaluations, (2) school records, (3) a guardian ad litem report from December 2018, and (4) a physician's report from December 2018.[2] At the hearing, several witnesses testified, including Mother; Daughter; Daughter's supervisor at work, Vicky Hogan; and a vocational expert, Linda Jones, who was retained by Father's counsel. Father's mother and sister testified, but Father did not testify. Following the hearing, the court took the matter under advisement and ordered the parties to submit income and expense statements.

In a Memorandum and Order entered on September 3, 2019, the court found Daughter had a severe disability within the meaning of Tenn. Code Ann. § 36-5-101(k)(2) based on the following findings:

> In this case, the proof has established that [Daughter] has an IQ of 68. She also has a diagnosis of ADHD Inattentive Type. The unrebutted testimony of [Mother] established that [Daughter] has problems understanding time. She must be told to bathe. [Daughter] has to be reminded to brush her teeth. She requires assistance with medication, [Daughter] cannot distinguish the difference between five cents and five dollars. She does not have a driver's

---

[1] The Seventh Circuit Court order creating the conservatorship was introduced into evidence and marked as Exhibit 15.

[2] The court entered an order placing Daughter's school records and the psychological and physician reports under seal.

license because she failed the test. [Daughter] has to be transported. Also, she cannot be left alone.

[Daughter] has never had a full-time job. She also has had a difficult time maintaining part time employment. While there has been testimony about [Daughter's] past part-time employment, the most persuasive testimony came from [Daughter's] current supervisor, Vickie Hogan. Ms. Hogan is a department manager with Lowes. Ms. Hogan testified that [Daughter] mainly waters plants and helps customers load what they have purchased into their cars. She testified that [Daughter] works 12-24 hours per week. Ms. Hogan testified that [Daughter] has a great attitude and is eager to work. Ms. Hogan also testified that [Daughter] forgets and often has to be reminded regarding her responsibilities. The Court specifically asked Ms. Hogan if she would recommend [Daughter] for a similar job. She stated yes, but that she could not recommend her for a job that requires greater responsibility.

The court also determined that Daughter was entitled to child support beyond the age of 21. In determining the amount of child support to award, the court stated that the Child Support Guidelines were not useful[3] and, instead, the court considered Mother's income and expenses, Daughter's income, and Father's ability to pay based on his income and expenses.

The court found Mother's gross monthly income to be $2,004.77, and it found her claimed monthly expenses in the amount of $1,272 to be reasonable and frugal. The court found Daughter was capable of earning $299.75 per month, and Daughter had the ability to contribute $176 per month to help with the household expenses. It found Father earned $7,746.83 per month and questioned the necessity of some of his expenses. Based on those findings, the court ordered Father to pay child support to Mother in the amount of $1,098.98 per month. And, thereafter, the court entered an agreed order awarding Mother $11,841 in retroactive child support for the period of November 2018 to November 2019.

This appeal followed.

STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings

---

[3] Tennessee Code Annotated § 36-5-101(k)(3) provides that the court *may* use the Child Support Guidelines when ordering child support beyond the age of 21. Thus, the court was not required to use the Child Support Guidelines. *See id.*

of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) (citations omitted). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc*., 356 S.W.3d 889, 895 (Tenn. 2011).

## ISSUES

Father raises the following issues on appeal:

I.   Did the trial court err in determining that Daughter had a severe disability?

II.  Did the trial court err in awarding child support for Daughter beyond the age of 21 without making specific factual findings that Daughter was living under the care and supervision of Mother and that it was in Daughter's best interest to remain in Mother's care?

III. Did the trial court err in determining the amount of child support?

## ANALYSIS

"[T]he court may continue child support beyond a child's minority for the benefit of a child who is *handicapped or disabled*, as defined by the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), until such child reaches twenty-one (21) years of age." Tenn. Code Ann. § 36-5-101(k)(1) (emphasis added). To continue child support beyond the age of 21, the court must find the child is "*severely disabled* and living under the care and supervision of a parent, and the court determines that it is in the child's best interest to remain under such care and supervision and that the obligor is financially able to continue to pay child support." Tenn. Code Ann. § 36-5-101(k)(2) (emphasis added).

The statute does not define "severely disabled." However, this court held that "the determination of whether a particular person is 'severely disabled' requires an individualized assessment of how that person's physical and mental impairments affect his or her ability to live independently." *Cook v. Hess*, No. M2012-01554-COA-R3-CV, 2013 WL 1788553, at *7 (Tenn. Ct. App. Apr. 24, 2013). In making this determination, the court should consider the child's ability to perform essential tasks such as bathing, dressing, dental hygiene, meal preparation, and medical care. *See id*. at *5–6. The court should also

consider the child's ability to work, use transportation, and manage his or her financial affairs. *See id.*

I. SEVERE DISABILITY

Father argues that Daughter is not severely disabled. Specifically, Father contends the evidence shows Daughter graduated from high school on time; successfully completed a certificate program as a Child Leader at the Tennessee College of Applied Technology; has held a part-time job at Lowes; is able to perform basic household tasks such as cleaning, cooking, and caring for her dog; and can take care of her basic hygiene. Conversely, Mother contends the preponderance of the evidence established that Daughter's mental and intellectual impairments severely limit her ability to perform essential tasks and to otherwise live independently.

The most recent psychological report entered into evidence revealed Daughter had an I.Q. of 68 and a diagnosis of ADHD. As for Daughter's independence at home, Mother's unrebutted testimony established Daughter has difficulty with the concept of time; therefore, Daughter does not know when she needs to wake up in order to get to work. Daughter also needs to be reminded to brush her teeth, eat, and take her medication. Mother testified that once Daughter is reminded to address her hygiene and medical needs, Daughter is otherwise able to perform those tasks independently but requires Mother's assistance when washing her hair. Mother testified Daughter is sometimes afraid to take food out of the oven, and while she can use the microwave, she does not have a clear understanding of the time it takes to cook something. For example, Daughter does not understand what "90 minutes" means. Daughter is also afraid to be left alone in the house at night, and Mother has to adjust her work schedule to accommodate Daughter in that respect.

As for Daughter's employment history and post-high school education, Mother testified that, during high school and after graduation, Daughter worked part-time at Hunter's Cee Bee Market bagging groceries. After graduation, Daughter successfully completed a one-year certificate program at the Tennessee College of Applied Technology that would qualify her to work as a teaching assistant for preschool. Mother testified Daughter needed assistance from Hermitage Learning Lab to complete the program. Daughter then started working at McNeilly's Daycare and worked there for approximately two months before her employment was terminated. Daughter also worked at Brighter Day Daycare for approximately four months before her employment was terminated. Mother testified Daughter worked at Kroger part-time bagging groceries but had to quit when Daughter's work scheduled conflicted with Mother's. Mother testified Daughter works part-time at Lowes watering plants.

In terms of Daughter's ability to manage her finances and transport herself to and from work, according to Mother, Daughter cannot distinguish between a quarter and a

nickel and does not know how to count money; consequently, Mother manages Daughter's bank account. Mother testified she must also transport Daughter to and from work because Daughter failed the test for a driver's license, and Daughter cannot use public transportation due to her fear of strangers and failure to look both ways before crossing the street.

Daughter testified she helped with chores around the house, such as taking out the trash, cleaning her room, and feeding and walking her dog. She said she needs Mother's help when washing her hair but can otherwise tend to her own hygiene needs. In her free time, she said she sometimes goes to clubs and concerts with her friends.

As for her employment history, Daughter stated that she had several part-time jobs but found it difficult to maintain employment. She was fired from McNeilly's Daycare because the director did not like the way Daughter treated the children. She was fired from an internship with Nashville Freedom School Partnership for poor performance. Thereafter, she was fired from Rue 21, a clothing store at Opry Mills Mall, because she did not know how to fold clothes or count money. She was fired from Kroger because she could not get there on a regular basis. Daughter testified that she presently worked part-time at Lowes watering plants, and she made enough money to pay the cell phone and water bills, but she did not know how much money she had in her bank account.

Father did not testify, and we note that his testimony would be of little value because, as Mother stated, he has not seen Daughter in several years. Father's mother, Ruth Robinson, and sister, Candice Robinson, testified, but the trial court stated that it would "give little weight" to their testimony because they had little contact with Daughter in the past few years. As for Ruth Robinson, the court stated that her testimony was not of much value, noting that she had only seen Daughter once since Christmas of 2015. The trial court made similar findings concerning Candice Robinson's testimony, who admitted that she had not seen Daughter since 2017 and did not see her much prior to that. We are in complete agreement with the trial court's finding that their testimony was of little relevance and is entitled to little weight.

Vicki Lynn Hogan, Daughter's supervisor at Lowes, testified that Daughter was a part-time, seasonal employee in the garden department at Lowes working 12 to 24 hours per week, and Daughter's main job was to water plants. Daughter also assisted customers by helping them load products into their vehicles. Ms. Hogan testified Daughter had a great attitude and always showed up for work on time; however, Daughter was inattentive and had significant difficulty remembering instructions. Ms. Hogan testified that, because of Daughter's deficits in attention, learning, and memory, she would not recommend Daughter for a job with greater responsibility.

Linda Jones of Vocational Economics, Inc., who was retained by Father's counsel, testified as a vocational expert. Ms. Jones testified she met with Daughter in 2017 for

approximately one hour and administered a vocational interest inventory. The inventory indicated Daughter had a high interest in child care, teaching, medical service, and social service. Ms. Jones opined that Daughter was capable of performing a full-time, unskilled job making $8 to $9 per hour. At the time Ms. Jones conducted the vocational assessment, Daughter had just graduated from high school; consequently, Daughter had very little employment history to consider. Ms. Jones also conceded that the vocational interest assessment concerned Daughter's vocational interests—in other words, the jobs Daughter was interested in performing, not necessarily the jobs that Daughter was qualified to perform.

Father argues that Daughter is not severely disabled because she graduated from high school on time, earned a post high school certificate as a Child Leader, works part time making over $11 per hour, and has no physical impairments or major medical issues. We find this court's decision in *Cook v. Hess* to be particularly instructive here. One of the issues in that case was whether the parties' child, Preston, had a severe disability under § 36-5-101(k)(2). 2013 WL 1788553, at *4. Preston had spina bifida with significant physical limitations and an I.Q. of 91. *Id*. Like Daughter, Preston graduated from high school and earned some college credit. *Id*. But, because of his mental and intellectual deficits, Preston had difficulty remembering to perform daily tasks, such as waking up in a timely manner, addressing his medical needs, preparing meals, washing and folding his clothes, and performing routine hygiene. *Id*. at *5.

Transportation was an issue for Preston as well. Preston obtained a driver's license and drove himself to and from work for several months, but his mother discontinued his driving privileges when Preston caused an accident. *Id*. at *4. And though Preston maintained a part-time job at Home Depot, his yearly employment evaluations reflected a poor performance, and the evidence also showed he could not manage his money. *Id*. at *4–5. Having found Preston lacked the ability to live independently, this court affirmed the trial court's determination that Preston had a severe disability. *Id*. at *7. Our findings, here, are substantially similar to our findings in *Cook*.

Nevertheless, Father argues this case can be distinguished from *Cook* because Daughter does not have a physical disability that severely limits her functioning. But Father misconstrues this court's decision in *Cook*. *Cook* does not stand for the proposition that a child must have both a physical and a mental limitation in order to have a severe disability. In fact, Preston's inability to live independently was not primarily due to his physical limitations, as significant as they were, but due to his mental and intellectual deficits— deficits that are very similar to Daughter's. Like Preston, the evidence shows that Daughter's current mental and intellectual deficits are severe enough to render her incapable of living independently.

Considering the foregoing testimony, we have determined the preponderance of the evidence supports the trial court's finding that Daughter cannot perform essential tasks,

such as waking up in a timely manner, washing her hair, remembering to take medications, remembering to brush her teeth, transporting herself to and from work, and managing money. And, considering Daughter's attention and memory deficits and her employment history, we agree with the trial court that her employment prospects are very limited. Therefore, we affirm the trial court's determination that Daughter has a severe disability.

## II. BEST INTEREST

Father contends the trial court erred in finding Daughter was entitled to child support beyond the age of 21 because the court failed to make the specific finding, as Tenn. Code Ann. § 36-5-101(k)(2) requires, that Daughter was living under the care and supervision of a parent and it was in Daughter's best interest to do so.[4] Mother contends specific factual findings were unnecessary because it was undisputed Daughter was living under Mother's care and supervision and the evidence preponderates in favor of the determination that it was in Daughter's best interest to continue living with Mother.

Generally, when a trial court fails to explain the factual basis for its decision in accordance with Rule 52.01 of the Tennessee Rules of Civil Procedure, the appropriate remedy is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Manning v. Manning*, 474 S.W.3d 252, 260 (Tenn. Ct. App. 2015) (quoting *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011)). Nevertheless, "[w]hen the trial court fails to explain the factual basis for its decisions, we may conduct a de novo review of the record to determine where the preponderance of the evidence lies[.]" *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) (citing *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013); *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005)). Furthermore, "[c]ourts need not make findings on stipulated or undisputed facts, unless conflicting inferences can be drawn from undisputed facts." *Lovlace*, 418 S.W.3d at 35.

Here, it is undisputed Daughter lives under Mother's care and supervision, and the evidence preponderates in favor of a finding that it is in Daughter's best interest to remain in Mother's care. Mother testified she assists Daughter with essential tasks such as waking up in time for work, washing her hair, preparing meals, and remembering to brush her teeth. Moreover, Mother is Daughter's conservator, and she manages Daughter's money, provides Daughter with transportation to and from work, and tends to Daughter's

---

[4] The statute permits the award of child support beyond 21 years of age "if such child is severely disabled and living under the care and supervision of a parent, and the court determines that it is in the child's best interest to remain under such care and supervision and that the obligor is financially able to continue to pay child support." Tenn. Code Ann. § 36-5-101(k)(2). Father concedes that he is capable of paying child support—the fourth and final element under Tenn. Code Ann. § 36-5-101(k)(2).

healthcare needs. In her testimony, Daughter opined that she and Mother have a good relationship.

Similarly, in *Cook*, this court affirmed the trial court's determination that it was in Preston's best interest to remain under his mother's care and supervision:

> The evidence is clear that Mrs. Hess has provided Preston with the tools to reach his full potential; her guidance and assistance have in no way limited Preston nor have her efforts shielded or protected him in a negative way. The physical environment provided by Mother in her home is necessary for Preston's health and well-being. . . . Preston is working to his full qualifications and mental and physical capabilities. His ability to work in no way negates his disability; it does indeed show that Preston and his mother have made every effort for him to live and work to his full capability.

2013 WL 1788553, at *6.

Mother's care for Daughter is no different in this case. Therefore, we have determined it is in Daughter's best interests to continue living with Mother, and, as such, we affirm the trial court's determination that Daughter is entitled to child support beyond the age of 21 in accordance with § 36-5-101(k)(2).[5]

---

[5] In the alternative, Father argues a 2008 amendment to Tenn. Code Ann. § 36-5-101(k)(2) requires the court to have found that Daughter was severely disabled at the time of the final divorce decree in order to continue support beyond the age of 21. We disagree. The amendment provides that "if such severely disabled child living with a parent was disabled prior to this child attaining eighteen (18) years and if the child remains severely disabled at the time of entry of a final decree of divorce or legal separation, then the court may order child support regardless of the age of the child at the time of entry of such decree." *See* Act of May 6, 2008, Tenn. Pub. Acts ch. 868, § 3. We find that this amendment is inapplicable to the case at bar because, as we stated in *Woodard v. Woodard*,

> [t]he statute only provides the court with the authority (1) to "order" support *at the time of the divorce* for a severely disabled person *who has already reached the age of majority* or (2) to 'continue' a valid support order for a severely disabled person beyond the age of majority.

No. E2017-00200-COA-R3-CV, 2018 WL 3339754, at *3 (Tenn. Ct. App. Jul. 9, 2018) (emphasis added). Daughter was less than two years old at the time of the divorce. But, even if the amendment were applicable, we decline to apply it retrospectively to a final divorce decree and child support order entered in 1999. *See Shaw v. Shaw*, No. W2010-02369-COA-R3-CV, 2011 WL 4379052, at *4 (Tenn. Ct. App. Sept. 21, 2011).

## III. CHILD SUPPORT AWARD

Father contends the court erred in determining the amount of support Father should pay because it failed to impute additional income to Daughter. Father argues she is capable of earning more per month than the trial court attributed to her.[6]

We review decisions pertaining to the amount of the child support award under the abuse of discretion standard. *Cook*, 2013 WL 1788553, at *8 (citations omitted). The abuse of discretion standard of review does not permit a reviewing court to substitute its discretion for that of the trial court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nevertheless, the abuse of discretion standard of review does not immunize a trial court's decision from any meaningful appellate scrutiny. *Id*.

> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id*. at 524–25 (internal citations omitted).

In determining whether a party is willfully or voluntarily underemployed, the court considers "the party's past and present employment and whether the party's choice to accept a lower paying job was reasonable and made in good faith." *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001) (citing *Ralston v. Ralston*, No. 01A01-9804-CV-00222, 1999 WL 562719, at *3 (Tenn. Ct. App. Aug.3, 1999)).

As noted earlier, Daughter has had several part-time jobs but found it difficult to maintain employment. She was fired from McNeilly's Daycare because the director did not like the way Daughter treated the children. She was fired from an internship with Nashville Freedom School Partnership for poor performance. She was fired from Rue 21 because she simply could not do the job. She was fired from Kroger because she could not

---

[6] Father also argues the court should impute additional income to Mother and Daughter because Mother failed to apply for social security benefits when Daughter turned 18. Mother testified she recently applied for benefits for Daughter, but the application was denied, and, at the time of trial, Mother was in the process of appealing that decision. Therefore, we find Father's argument to be unavailing. Father also takes issue with the fact that the trial court "did not set a specific duration for the ongoing child support obligation." Because this bare contention is not supported by further legal argument, we will not address it.

get there on a regular basis. Furthermore, Daughter testified that she does not believe she can work a full-time job. And Daughter's employment opportunities are limited to jobs that fit with Mother's schedule because Mother must transport Daughter to and from work.

In determining that Daughter was capable of earning $299.75 per month, the trial court primarily relied on Mrs. Hogan's testimony. According to Ms. Hogan, Daughter worked 12 to 24 hours per week at Lowes for approximately four to five months out of the year making $11.49 per hour. In Ms. Hogan's opinion, Daughter was capable of performing her job watering plants, but Ms. Hogan would not recommend Daughter for a job with greater responsibilities due to her attention and memory deficits. Daughter's history of working unskilled, part-time jobs for short periods of time supports Ms. Hogan's assessment of Daughter's ability and potential. There being no competent evidence to contradict the foregoing facts, we find the evidence supports the trial court's determination that Daughter was working at her full potential and was capable of earning $299.75 per month.

Accordingly, we affirm the trial court's discretionary decision to award child support in the amount of $1,098.98 per month.

### IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against Robert Walter Lillard.

_____
FRANK G. CLEMENT JR., P.J., M.S.