**Frank MANNING, et al.**

v.

**Amy Emmitt MANNING**

Court of Appeals of Tennessee,
AT NASHVILLE.

January 28, 2015 Session

Filed March 10, 2015

Jennifer F. Franks, Columbia, Tennessee, for the appellant, Amy Emmitt Manning.

L. Samuel Patterson, Columbia, Tennessee, for the appellees, Frank Manning and Brenda Manning.

## OPINION

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., and KENNY ARMSTRONG, J., joined.

In this grandparent visitation case, the trial court awarded grandparents visitation with the child at issue, finding that there was "some deprivation" of visitation by the child's mother. We vacate the judgment of the trial court and remand for further proceedings to determine whether the child's mother opposed visitation, as that phrase is defined in *Huls v. Alford,* No. M2008–00408–COA–R3–CV, 2008 WL 4682219 (Tenn.Ct.App. Oct. 22, 2008).

### Background

Frank Manning ("Grandfather") and Brenda Manning ("Grandmother," and together with Grandfather, "Grandparents") are the paternal grandparents of the child at issue. The child's mother, Amy Emmitt Manning ("Mother") and the child's father ("Father") were married after the child was born and subsequently divorced.[1] Father was convicted of stalking Mother and has no visitation with the child. It is undisputed that Father has been in and out of jail throughout the child's life.

After the alleged deterioration of the relationship between Grandparents and Mother, Grandparents filed a petition for grandparent visitation on October 18, 2013. Grandparents' petition alleged that Mother opposed their once frequent visitation with the child and asked that the trial court award them visitation "on a monthly basis on the weekends, time during summer,

---

1. Mother also has an older child from a prior relationship that is not at issue in this case.

spring and fall breaks." Grandparents also requested a *pendente lite* hearing to determine if they should be awarded temporary visitation pending the final resolution of the case.

Mother filed an Answer on October 31, 2012, denying that Grandparents were entitled to court-ordered visitation. In her answer, Mother argued, *inter alia,* that Grandparents' petition was merely a subterfuge to allow Father to obtain visitation with the child,[2] and that she had never opposed visitation solely with Grandparents. On November 8, 2013, Mother filed a motion to dismiss Grandparents' request to hold a *pendente lite* hearing, which was granted by the trial court by order of February 13, 2014.

A trial was held on April 4, 2014. The child was nearly six years old at the time of trial. The testimony as trial was undisputed that Mother, her older child, and the child at issue resided with Grandparents for approximately twelve months shortly after the child's birth, from August 2008 to August 2009. Father was incarcerated during much of this time. Even after Mother moved from Grandparents' home, however, Grandmother would babysit the child three days a week. In addition, Mother would visit Grandparents frequently and often stay overnight with the child. Even after Mother stopped her frequent overnight visits with Grandparents, Grandparents enjoyed frequent visits with the child, and kept him overnight often. In addition, until the child began school, Grandmother kept the child for two days during the week while Mother worked. Grandmother also testified that Mother and the child resided with Grandparents from July 2010 to February 2011, but Mother disputed that this occurred.

A central issue in the case is whether Mother opposed visitation. It was undisputed that Grandparents have had no overnight visitation with the child since June 2012. Grandmother testified that she frequently requested visitation with the child, but that Mother always responded that the child had plans. In contrast, Mother testified that Grandparents called infrequently to request visitation, but that when Grandparents did request visitation, Mother and the child's schedule could not accommodate the visitation. In addition, Mother testified that Grandparents only requested overnight visitation with the child and when Mother would suggest visitation at a park or a restaurant, Grandparents declined.

Although Grandparents were no longer permitted overnight visitation with the child after June 2012, Grandparents enjoyed frequent trips to the child's school for lunch during the 2012–2013 school year. On September 23, 2013, however, the child's school sent a letter home that stated that only those individuals who were listed as the child's emergency contacts would be permitted to have lunch at school with the child. Because Mother refused to permit Grandparents to be listed as emergency contacts for the child, they were no longer allowed to eat lunch with him at school.

Mother testified that she refused to allow Grandparents to be listed as emergency contacts, because this privilege would allow Grandparents to remove the child from school. Mother testified to an incident in the previous school year in which Grandmother and Mother had a misunderstanding as to whether Grandmother would pick the child and his older sister up from school. As such, Grandmother picked the child up from school without Mother's knowledge, which Mother testi-

2. Mother appears to have abandoned this argument at trial.

fied caused her significant anxiety because, for a period of time, she was unaware of where the children were. Grandmother did not deny that this incident occurred, but characterized the incident as a minor mis-communication. According to Grandmother, she and Mother previously discussed that Grandmother would retrieve the children from school. While Grandmother was away from home during the day, Mother called and left a message that Grandmother should not retrieve the children. Grandmother testified that she did not receive the message and proceeded to pick up the children as previously requested. Once Grandmother learned that she was not supposed to pick up the children, Grandmother testified that she immediately returned the children to their Mother. Grandmother testified that as a result of this incident and Mother's refusal to name Grandparents as the child's emergency contacts, Grandparents were unable to have lunch with the child during the 2013–2014 school year. Grandmother further testified that she was informed by the school that Mother could designate that Grandparents could have lunch with the child even without naming Grandparents as emergency contacts. Mother denied that this was an option.

Finally, Mother testified that there have been no adverse effects to the child since the child has been spending less time with Grandparents. Specifically, Mother testified that the child's sleeping and eating habits were not altered after the reduction in visitation, that the child was performing well in school, and that the child was a happy, normal child. Further, testimony showed that Grandparents still have considerable contact with their son, who Mother testified is involved with illegal drugs. Accordingly, Mother testified that it frightened her for the child to be around Father. Grandmother testified that so long as the court orders that Father is not allowed visitation with the child, Grandparents will follow that order and will not permit Father to be around the child. Mother expressed no concerns about the child's safety exclusively with regard to Grandparents.

At the conclusion of trial, the trial court took the matter under advisement. The trial court entered a lengthy written order on May 8, 2014. In the order, the trial court found that Grandparents established that the child had resided with Grandparents for twelve consecutive months prior to the cessation of the relationship by Mother. As such, the trial court ruled that Grandparents were entitled to "a rebuttable presumption that denial of visitation may result in irreparable harm to the child." The trial court further concluded that no evidence was presented that rebutted the presumption. The trial court further concluded that Grandparents demonstrated that because of the central role that Grandparents played in the child's life, Grandparents had shown that the child would suffer substantial harm through the cessation of the relationship. Finally, the trial court, expressly considering the factors outlined in Tennessee Code Annotated Section 36–6–307, found that continued visitation with Grandparents was in the child's best interests. Accordingly, the trial court awarded Grandparents visitation with the child one Friday evening every month and one continuous five-day period during the summer.

Mother filed a motion to alter or amend the trial court's ruling on May 20, 2014. On the same day, Mother filed a motion to stay the trial court's judgment pending resolution of the pending motion to alter or amend. The trial court denied Mother's motion to alter or amend on June 4, 2014. However, the trial court held that Rule 62.02 requires that its judgment be stayed for thirty days after the resolution of a

motion to alter or amend. Thereafter, on June 13, 2014, Mother filed an additional motion in the trial court, this time requesting a stay of the trial court's judgment pending appeal. The trial court entered an order on August 15, 2014, granting Mother's request for a stay pending appeal.

## Issues Presented

Mother raises several issues on appeal, which are taken, and slightly restated, from her brief:

1. Whether the trial court erred in not dismissing the Grandparent's petition because testimony shows that Mother did not oppose visitation?

2. Whether the trial court erred in finding pursuant to Tennessee Code Annotated Section 36–6–306(a)(5) that the child resided with the Grandparents for 12 consecutive months prior to the cessation of the relationship by Mother?

3. Whether the trial court erred in finding that the denial of visitation resulted in irreparable harm to the child?

4. Whether the trial court erred in finding that Grandparents carried the burden to prove severe emotional harm to the child due to the loss of the grandparent-grandchild relationship pursuant to Tennessee Code Annotated Section 36–6–306(b)(3)?

5. Whether the trial court erred in finding that grandparent visitation is in the best interests of the child pursuant to Tennessee Code Annotated Section 36–6–307?

6. Whether Mother should be awarded her attorney's fees incurred at trial and on appeal?

In the posture of Appellees, Grandparents also request an award of attorney's fees on appeal.

## Standard of Review

Review of findings of fact by a trial court in civil actions is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn.2013). A determination of visitation "often hinges on subtle factors such as the [parties'] demeanor and credibility during the trial proceedings." *Battleson v. Battleson*, 223 S.W.3d 278, 282 (Tenn.Ct. App.2006). "When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony." *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn.2011):

## Discussion

The issue in this case concerns grandparent visitation, which is governed by Tennessee Code Annotated Section 36–6–306, commonly known as the Grandparent Visitation Statute. As this Court has explained, an understanding of the importance of a parent's fundamental right to raise a child as the parent sees fit is foundational to any discussion of grandparent visitation:

Some background on grandparent visitation is helpful. The decisions of the U.S. Supreme Court and the Tennessee Supreme Court, interpreting the federal and state constitutions, explicitly prohibit any judicial assumption that grandparent/grandchild relationships always benefit the child, as contrary to the parents' fundamental right to raise their children as they see fit. *See Troxel v. Granville*,

530 U.S. 57, 66–72, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (recognizing parents' fundamental constitutional right to make decisions on care, custody and control of children, finding trial court erred in presuming grandparent visits are in best interest of children); *Hawk v. Hawk*, 855 S.W.2d 573, 577–82 (Tenn.1993) (recognizing parents' fundamental constitutional right, finding trial court engaged in "sentimental" commentary on grandparents and erred in "unquestioning judicial assumption" that grandparent-grandchild relationship always benefits child, basing award of grandparent visitation on that presumed benefit). To avoid such an assumption, the Tennessee constitution and Tennessee's grandparent visitation statute require a grandparent seeking visitation to prove, as a threshold requirement, that the child will be in danger of substantial harm if visitation is not ordered by the court. *Hawk*, 855 S.W.2d at 581; Tenn. Code Ann. § 36–6–306(b)(1). Both the federal constitution and Tennessee's grandparent visitation statute require the petitioning grandparent to show that visitation was opposed or denied in order for the court to consider ordering visitation. *Troxel*, 530 U.S. at 71, 120 S.Ct. 2054 (trial court erred in giving no weight to fact that parent had assented to some grandparent visitation under certain conditions); *Huls v. Alford*, No. M2008–00408–COA–R3–CV, 2008 WL 4682219, at *7–8 (Tenn.Ct.App. Oct. 22, 2008) (in light of parents' fundamental right, Tennessee grandparent visitation statute "is not implicated" unless visitation is denied or opposed). Under *Troxel*, pursuant to the federal constitution, in all phases of a proceeding on grandparent visitation, there is a presumption that a fit parent is acting in the child's best interest, and the court must accord special weight to the parent's determina-

tions. *Troxel*, 530 U.S. at 68, 70, 120 S.Ct. 2054 (plurality opinion) ("there is a presumption that fit parents act in the best interests of their children.") (if a fit parent's decision on grandparent visitation "becomes subjected to judicial review, the court must accord at least some special weight to the parent's own determination.").

■ *Green v. Evans*, No. M2011–00276–COA–R3–CV, 2012 WL 1107887, at *8 (Tenn.Ct.App. Mar. 30, 2012). Thus, "[g]randparent visitation statutes must be narrowly construed in order to comport with the state and federal constitutions, because they are in derogation of the parents' fundamental constitutional rights." *Spears v. Weatherall*, 385 S.W.3d 547, 550 (Tenn.Ct.App. 2012).

■ In order to protect parents' fundamental right to the care and custody of their children, Tennessee Code Annotated Section 36–6–306 includes several procedural hurdles that must be met before petitioning grandparents may be awarded visitation under the statute, the first of which is whether "such grandparent visitation is opposed by the custodial parent." Tenn.Code Ann. § 36–6–306(a). The Tennessee Supreme Court has indicated that this hurdle is not only statutorily required, but necessary to ensure that the grandparent visitation scheme comports with a parent's constitutional rights:

> Allowing a grandparent to procure visitation without first requiring a showing of harm to the child *if such visitation is denied* not only violates section 36–6–306(b)(1) which specifically requires such a showing, it also constitutes an infringement on the fundamental rights of parents to raise their children as they see fit.

*Smallwood v. Mann*, 205 S.W.3d 358, 363 (Tenn.2006) (emphasis added). As ex-

plained by the Middle Section of this Court in *Huls v. Alford,* No. M2008–00408–COA–R3–CV, 2008 WL 4682219 (Tenn.Ct.App. Oct. 22, 2008), there can be no danger of substantial harm unless visitation is denied by the custodial parent:

> As set forth above, the very language of Tenn.Code Ann. § 36–6–306 is such that the statute is not implicated unless "visitation is opposed by the custodial parent or parents." As is clear from *Smallwood,* there cannot be "the presence of a danger of substantial harm to the child" as required by the statute unless visitation is denied. Without a denial of visitation, there simply cannot be any resulting "danger of substantial harm to the child."

*Huls,* 2008 WL 4682219, at *8. Thus, this Court has held that petitioning grandparents "as a threshold matter" bear the burden of proving that the custodial parents opposed their visitation. *Uselton v. Walton,* No. M2012–02333–COA–R3–CV, 2013 WL 3227608, at *12 (Tenn.Ct.App. June 21, 2013). Without this threshold finding, "the Grandparent Visitation Statute is not even implicated[.]" *Id.* (citing *Huls,* 2008 WL 4682219, at *8).

Because of the relatively recent enactment of the Grandparent Visitation Statute, few courts have considered the issue of what proof is required to show that a custodial parent opposes visitation. This Court in *Huls v. Alford,* attempted to clarify when opposition may be found. *See Huls,* 2008 WL 4682219, at *8. In *Huls,* the trial court awarded petitioning grandparents very liberal visitation. This Court reversed the trial court's ruling, however, concluding that petitioning grandparents failed to meet their burden of demonstrating that the child's mother opposed visitation. In reaching its decision, the Court first emphasized that the trial court made no "specific finding that either of the [p]ar-

ents were opposed to [the] [p]etition[ing] [grandparents] having visitation with the [c]hild." *Id.*

The Court further found that the child's mother's decision to impose limitations on the petitioning grandparents' visitation did not amount to a denial of visitation. *Id.* Specifically, in *Huls,* the petitioning grandparents frequently requested overnight visitation with the child on weekends. When the child's mother indicated that she would permit the day-time visitation so long as mother's boyfriend could be present, the petitioning grandparents declined to exercise visitation. *Id.* at *3. The Court of Appeals concluded that imposing limitations and conditions on once liberal visitation does not necessarily support a finding that a custodial parent opposed visitation. Instead, the Court explained:

> The term "opposed" includes situations both where visitation is denied totally and where visitation is technically not opposed, but where the frequency and/or conditions imposed by the parents on the visitation are such that it equates to a denial of visitation.

*Huls,* 2008 WL 4682219, at *8. Consequently, a finding that the custodial parents "did not allow [p]etition[ing] [grandparents] visitation whenever they requested it" simply does not "amount to a finding that visitation was opposed[.]" *Id.* As the Court explained: "While the [t]rial [c]ourt did point out that [m]other did not allow [the] [p]etition[ing] [grandparents] visitation whenever they requested it, this does not amount to a finding that visitation was opposed or that [p]arents have attempted to sever the relationship between [the] [p]etition[ing] [grandparents] and the Child." *Id.* As such, the Court of Appeals reversed the trial court's finding that petitioning grandparents could

rely on the Grandparent Visitation Statute.

In a similar case, *Uselton v. Walton,* the Court of Appeals also reversed a trial court's finding that the Grandparent Visitation Statute had been triggered, instead concluding that the evidence showed that the child's custodial parent did not oppose visitation by the petitioning grandparents. *Uselton,* 2013 WL 3227608, at *7–*13. In *Uselton,* the child's mother reduced petitioning grandparents' visitation, which had previously been "a few times during the week and to have at least one overnight visit with her on weekends" to about one weeknight visit per week and one overnight visit every other weekend. Petitioning grandparents argued that this reduction and certain other "stipulations" imposed by the child's mother amounted to a denial of visitation. *Id.* at *13.

The trial court found that "there was circumstantial evidence to establish that there was some opposition to visitation." *Id.* at *7. The Court of Appeals reversed, concluding that simply because petitioning grandparents no longer were permitted to have as generous visitation with the child was insufficient to show opposition to visitation. *Id.* at *13.[3] The Court of Appeals further concluded that the custodial parent's motivation for a decrease in visitation was not a particularly relevant consideration, as "the State, in the form of the trial judge, must resist the urge to become

'super-parent;' ... because the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a better decision could be made." *Id.* at *13 n.12 (citing *Troxel v. Granville,* 530 U.S. 57, 72–73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)).

■ A thorough review of the record reveals that like in *Huls,* the trial court made no specific finding that Mother opposed visitation in this case. It is well settled that, in bench trials like the one in this case, courts must make findings of fact and conclusions of law to support their rulings. Rule 52.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

*Id.* Prior to July 1, 2009, when the *Huls* case was decided, trial courts were only required to make specific findings of fact and conclusions of law "upon request made

---

3. In *Uselton,* there was some evidence presented at trial that the child's mother indicated that she would no longer allow visitation after an incident that occurred after the filing of the grandparent visitation petition. *See Uselton,* 2013 WL 3227608, at *13. The majority Opinion held, however, that any opposition that may have occurred after the filing of the petition was not relevant. *Id.* Judge Highers filed a dissenting Opinion in *Uselton* on this issue, stating that in his view of the Grandparent Visitation Statute, the trial court was entitled to consider both pre-petition and

post-petition facts concerning the custodial parent's opposition to the visitation. *See Uselton,* 2013 WL 3227608, at *17–*20 (Highers, J., dissenting) ("Nothing is gained in this case by distinguishing opposition that occurred before the petition was filed and opposition that occurred within three to four days after the petition was filed."). Neither party in this case particularly relies on any facts that occurred subsequent to the filing of the grandparent visitation petition; accordingly, we need not determine whether the court should consider post-petition facts.

by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, No. W2009–01507–COA–R3–CV, 337 S.W.3d 771, 791 (Tenn.Ct.App.2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id.*

This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008–01144–COA–R3–PT, 2009 WL 1362314, at *8 (Tenn.Ct.App. May 15, 2009). Instead, the requirement serves three important purposes: to facilitate appellate review, to "make definite precisely what is being decided by the case," and "to evoke care on the part of the trial judge in ascertaining and applying the facts." *Lovlace v. Copley*, 418 S.W.3d 1, 34–35 (Tenn. 2013). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003–01739–COA–R3–PT, 2004 WL 865840, at *19 (Tenn. Ct.App. April 21, 2004)). Without findings of fact, we cannot discern the basis for the trial court's ruling, "and we are unable to afford appropriate deference to the trial court's decision." *In re Connor S.L.*, No. W2012–00587–COA–R3–JV, 2012 WL 5462839, at *4 (Tenn.Ct.App.Nov. 8, 2012).

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law pursuant to Rule 52.01 is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes*, No. W2010–00294–COA–R3–CV, 2011 WL 2361563, at *1 (Tenn. Ct.App. June 9, 2011). In some cases, however, this Court has indicated that we may "soldier on" with our review despite the trial court's failure to comply with Rule 52.01:

On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011–02523–COA–R3–CV, 2012 WL 5873582, at *10 (Tenn.Ct.App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011–02112–COA–R3–CV, 2012 WL 3675321, at *4 (Tenn.Ct.App. Aug. 28, 2012)).

*Pandey v. Shrivastava*, No. W2012–00059–COA–R3–CV, 2013 WL 657799 (Tenn.Ct. App. Feb. 22, 2013).

Grandparents argue that the trial court made sufficient findings to avoid remand. In the best interests portion of the final order, the trial court states:

The Court finds that there has been some deprivation of visitation by the Mother. Specifically, the Mother informed the grandchild's school not to allow lunch with the child beginning with the 2013 school year. Also, the lack of visitation that has existed due to the fact that the child's schedule did not permit visitation amounts to a denial or deprivation of visitation by this Court. The parties testified that there have not been any significant visitations and the lack of communication on both sides has played a significant role in that fact. The Court finds that this factor weighs in favor of the Grandparents.

We respectfully disagree that the above findings are sufficient to conclude that the trial court found that Mother opposed visitation, as that requirement is defined by Tennessee Courts.

First, we note that the simple fact that there has been "some deprivation" of visitation is insufficient to support a finding

that a custodial parent opposed visitation. Instead, the law is clear that the custodial parent is entitled to place "reasonable limitations" on a grandparent's visitation with a child, as "reasonable limitations ... 'cannot be considered opposition to visitation.'" *Uselton*, 2013 WL 3227608, *13 (quoting *Green*, 2012 WL 1107887, at *10). The issue of whether Mother offered Grandparents visitation with reasonable limitations, so as to defeat Grandparents' claim that Mother opposed visitation, was a source of considerable dispute in the trial on this cause. This issue was left unresolved by the trial court's order. The question remains, however, as to whether the trial court's failure to make specific findings regarding this dispute is fatal to appellate review. We conclude that it is.

While in both *Huls* and *Uselton*, this Court was able to "soldier on" to consider the merits of petitioning grandparents' request in spite of the trial courts' failure to make specific findings of opposition to visitation, the facts in this case do not lend themselves to the same resolution. Specifically, in both *Huls* and *Uselton*, the parties agreed that although the custodial parent had significantly decreased the petitioning grandparents' visitation with the child, the petitioning grandparents were able to exercise some visitation with the child prior to the filing of the petitions. Here, however, a significant dispute exists as to whether Mother offered Grandparents any visitation with the child, as well as to whether Grandparents refused such offer.

Specifically, Mother testified at trial that although she no longer allowed the child to have overnight or unsupervised visits with Grandparents,[4] she did not oppose all visitation and had even offered to allow Grandparents to have visitation with the child at a park or restaurant. Mother testified, however, that Grandparents declined that offer and instead only wanted overnight, weekend visitation with the child. Grandparents did not dispute Mother's assertion that she offered Grandparents supervised visitation or that Grandparents had declined such offer; neither Grandmother nor Grandfather's testimony specifically mentions either Mother's alleged offer or their response. However, from our review of the record, Grandmother often characterizes her unsuccessful attempts to have visitation with the child as a request to "have him for the weekend," and indicates that Mother would not allow Grandparents to "keep" the child. Both statements tend to support Mother's assertion that Grandparents only requested overnight or unsupervised visitation with the child. In addition, when asked what kind of visitation the trial court should award, Grandmother responded that Grandparents should be awarded "at least a weekend, with him, overnight." Grandmother clarified, however, that she would accept less visitation if ordered by the trial court.

The trial court did not mention Mother's testimony regarding her offer to allow Grandparents supervised visitation with the child in its final order. Mother's testimony, however, goes directly to the question of whether Mother opposed visitation or, instead, placed reasonable limits on the visitation. Grandparents do not specifically contradict Mother's testimony; however, the thrust of their argument appears to be that Mother denied them any visitation. Accordingly, even considering the testimo-

---

4. Mother explained that her reluctance to allow Grandparents unsupervised visitation with child was due to the fact that the child had not seen Grandparents in several months at the time of trial. Mother further indicated that she was more comfortable with supervised visitation because she could ensure that Father was not present for the visits.

ny in the light most favorable to the Grandparents, the parties' positions on this issue are directly contradictory. Consequently, the resolution of this issue is dependent on the relative credibility of the parties.

When the resolution of an issue in a case depends on the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn.Ct.App.1997); *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995). "The weight, faith, and credit to be given to any witness's testimony **lies in the first instance with the trier of fact,** and the credibility accorded will be given great weight by the appellate court." *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC,* 102 S.W.3d 638, 643 (Tenn. Ct.App.2002) (emphasis added). In this case, the trial court made no specific credibility findings with regard to the parties. While in some cases, we may assume that the trial court found one party more credible than another due to the trial court's decision, *see generally Taylor v. McKinnie,* No. W2007–01468–COA–R3–JV, 2008 WL 2971767, at *4 (Tenn.Ct.App. Aug. 5, 2008) (considering the standard of review of an implicit credibility finding), the trial court's ruling that "some deprivation" occurred causes this Court to question whether the trial court applied the correct standard in deciding this issue. Further, the trial court appears to credit much of Mother's testimony regarding the child's schedule as the reason for the decrease in visitation. Because the trial court's order makes no mention of Mother's assertions on this particular issue, we cannot determine from the record whether the trial court discredited Mother's testimony regarding her offer of supervised visitation, or whether the trial court simply concluded that despite this offer, the lack of visitation alone was sufficient to find that the Grandparent Visitation Statute is triggered. Under these circumstances, we conclude that the trial court is in the better position to decide this issue.

Based on the foregoing, the question of whether Mother, in fact, offered Grandparents supervised visitation, whether that offer was reasonable, and whether Grandparents declined that visitation, must be resolved in order to determine whether Mother's actions can be fairly characterized as opposing visitation, as defined by Tennessee caselaw. As previously discussed, the record must support a finding that the custodial parent opposed visitation in order to "even implicate[ ]" the Grandparent Visitation Statute. *Uselton,* 2013 WL 3227608, at *12. Because the resolution of this question may alone result in Grandparents' petition being denied, we decline to consider the trial court's other findings under the Grandparent Visitation Statute as advisory. *See Colonial Pipeline Co. v. Morgan,* 263 S.W.3d 827, 838 (Tenn.2008) ("Courts ... may not render advisory opinions based on hypothetical facts.") (citing *Third Nat'l Bank v. Carver,* 31 Tenn.App. 520, 218 S.W.2d 66, 69 (Tenn. Ct.App.1948)). Mother's other issues related to the trial court's findings are, therefore, pretermitted.

### Attorney's Fees

Both parties request an award of attorney's fees on appeal. Mother's brief cites no law that would support her request for attorney's fees in this case.[5] In their brief, Grandparents point out that Mother has

---

5. The only case cited in this section of Mother's brief concerns attorney's fees awarded

incident to a divorce. *See Seaton v. Seaton,* 516 S.W.2d 91, 93 (Tenn.1974). Mother

cited an insufficient basis for her request, but also fail to cite any law which would entitle them to attorney's fees on appeal.[6] As such, both Mother's and Grandparents' arguments are waived. *See Branum v. Akins*, 978 S.W.2d 554, 557 n. 2 (Tenn.Ct. App.1998) ("Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal.").

## Conclusion

The judgment of the Chancery Court of Maury County is vacated and this cause is remanded to the trial court for further proceedings in accordance with this Opinion. Costs of this appeal are taxed one-half to Appellant Amy Emmitt Manning, and her surety, and one-half to Appellees Frank Manning and Brenda Manning, for all of which execution may issue if necessary.

---

makes no argument as to how the above case applies to the case-at-bar.

6. Grandparents note that the Court in *Uselton* denied attorney's fees to petitioning grandparents in a grandparent visitation case because the petitioning grandparents did not prevail. *See Uselton*, 2013 WL 3227608, at *16. However, nothing in *Uselton* specifically indicates that prevailing grandparents are entitled to an award of attorney's fees. As such, it offers no support for Grandparents' request.