IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 2, 2020

## DWIGHT MORISCH v. RYANN MAENNER ET AL.

**Appeal from the Juvenile Court for Haywood County**
**No. 9924      J. Roland Reid, Judge**

_____

### No. W2020-00362-COA-R3-JV

_____

A grandfather filed a petition to obtain visitation with his grandchild.  The trial court granted the petitioner relief, and the child's mother appeals.  The grandfather did not allege, and the proof did not establish, that the mother had opposed or severely reduced the grandfather's visitation before the petition was filed.  We, therefore, reverse the trial court's judgment and dismiss the case.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed and Dismissed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which KRISTI M. DAVIS, J., joined, and CARMA DENNIS MCGEE, J., filed a separate dissenting opinion.

Justin P. Jones, Brownsville, Tennessee, for the appellant, Ryann Maenner.

Dwight Morisch, Jackson, Tennessee, pro se.

## OPINION

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Dwight Morisch ("Grandfather") is the paternal grandfather of Chevy Tyler Lee Maenner ("Chevy"), who was born out of wedlock in December 2011 to Ryann Maenner ("Mother") and David Morisch ("Father").  Mother and Father were living with Grandfather when Chevy was born, and the evidence shows that Mother moved out sometime in late 2012 or early 2013.  Father and Chevy continued living with Grandfather until sometime in 2014.

Mother and Father shared custody of Chevy pursuant to an informal arrangement until December 2014, around which time Father was arrested for drug-related offenses.

Mother filed a petition that same month to be named Chevy's primary residential parent. The Juvenile Court of Madison County granted Mother's petition and awarded Mother sole custody of Chevy in May 2015. According to the court's order, if Father wanted visitation with Chevy, he would be required to petition the court and have his visitation supervised by Safe Haven through the Madison County Juvenile Court.

In March 2019, Grandfather filed a petition seeking visitation with Chevy. The trial court held a hearing to consider Grandfather's petition on February 5, 2020. According to Mother, Chevy did not have any contact with Grandfather from December 2014 until sometime in February or March of 2019, when Mother contacted Grandfather to ask if he could take care of Chevy for a couple of hours while Mother was busy with a college clinical.[1] Mother testified that Chevy's visit with Grandfather went well and that Grandfather offered to watch Chevy again if it would help Mother. Mother stated that she contacted Grandfather again about a week later to ask him to watch Chevy during another one of her clinicals, and Grandfather agreed. When she went to collect Chevy after this second visit, Mother testified that Grandfather began talking about legal documents he wanted to have drawn up:

> When I picked him up the second time is when he started communicating to me about going to the lawyer. He had asked me to go to his lawyer's office to sign some kind of paperwork. I wasn't really familiar with what he was talking about. The third time that I had come to pick Chevy up, on the third visit is when he had the papers on his counter at his home, asking me to sign them right then and there.

Mother stated that she did not want to sign the papers Grandfather presented to her. Also, Mother testified, Chevy told her that he had seen Father at Grandfather's house. This information concerned Mother because Father's visitation with Chevy was ordered to be supervised, and Father was required to petition the Juvenile Court of Madison County if he wanted visitation with Chevy. As far as Mother was aware, Father had not filed anything with the court seeking visitation.

Grandfather's testimony differed somewhat from Mother's. Whereas Mother testified that Grandfather did not see Chevy at all between December 2014 and February or March 2019, Grandfather testified that he continued to see Chevy even after Mother obtained sole custody until sometime in November 2016, when Mother terminated the visits. Grandfather then stated that he did not see Chevy again until March 2019, when Mother asked him to care for Chevy while she was in her clinical at school. Grandfather was asked about the legal papers he asked his attorney to draw up, and he responded as follows:

---

[1] During the intervening four-year period, Mother testified that Grandfather did not call, write, send any e-mails, or give Chevy any presents.

I saw [Chevy] in March 2019 and that's when I had talked to the mom. You know, I got to thinking moving forward, you know, in case something ever happened, you know, to Chevy, you know, God forbid anything ever happen to Ryann, you know, I wouldn't want Chevy to lose his mom, but in case something did I didn't want him to get caught up in the system, so I brought up to her, I said, "Would you mind, you know, if I got something drawn up, you know, as far as anything happening to you that I would be granted custody," and, you know, as far as regular visitation and she agreed and then the last time -- you know, so that's when I came and saw you [his attorney] and got some papers drawn up so we could have something on file in case something happened to Ryann that, you know, Chevy wouldn't get caught up in the system. I showed her the papers, gave her a copy of it, told her to look it over and she said she wanted to speak with someone about it and I said, "I understand. No problem."

Grandfather testified that after he filed his petition in March 2019, Mother allowed him to see Chevy in April.

Q. When you filed this in March y'all were working things out still?

A. Yes.

Q. Okay. And she was letting you see the child?

A. Yeah. I got to see him in March and in April.

In his petition, Grandfather alleged that Chevy resided with him for over twelve months and that due to this length of time, there was a rebuttable presumption that denying visitation would result in irreparable harm to the child. Grandfather further asserted that he had a significant relationship with Chevy and that loss or severe reduction of this relationship would result in severe emotional harm to the child. Grandfather asked the court to award him reasonable and liberal visitation with Chevy. Mother opposed the petition and asked that it be dismissed. Father did not file a responsive pleading or participate in the proceedings in any way.

Following the hearing, the trial court entered an order granting Grandfather the relief he sought. The trial court made the following relevant findings of fact:

11. There was a dispute between the petitioner and respondent mother as to how often petitioner visited with the child after mother was granted custody. 12. The evidence preponderates in favor of petitioner's position that he had some visits with the child between 2014 and 2019. However, these visits were very limited in number and duration.

13. Respondent mother reached out to petitioner in 2019 for him to keep the child while she attended college classes on 2 or 3 occasions.

14. Mother has not presented any evidence that petitioner would present any risk of harm to the child but was concerned the petitioner would allow the child to see his father in contravention of the Madison County Juvenile Court Order.

15. The mother expressed reluctance in having a court ordering her to allow visitation as she felt she should, as a parent, have that decision alone.

After discussing the statutory requirements of the Grandparent Visitation Statute, Tenn. Code Ann. §§ 36-6-306 and -307, the trial court concluded:

Pursuant to the statutory guidelines and all pertinent factors the court finds the petitioner has met his threshold of showing a "significant existing relationship." The court further finds based upon the statutory guidelines and all pertinent facts that he has met his burden of showing a "danger of substantial harm to the child," if visitation was denied. The court must now determine if based upon the statutory guidelines and factors, whether it would be in the best interest of the child to order reasonable visitation.

The child lived with the petitioner for the first two (2) years of his life. The petitioner visited with the child the next two (2) years of his life until mother obtained sole custody in 2015. Between 2015 and 2019 visitation was sporadic. Petitioner attempted to obtain a consent order of visitation with the mother prior to filing the present petition. Mother has expressed no reservations about the grandparent having visitation other than a concern that the father will attempt to circumvent the Madison County Juvenile Court Order and she doesn't wish a set schedule to be ordered but rather it should be left up to her discretion.

After a careful review of the factors, the court finds that it would be in the best interest of the child to order reasonable visitation. The court further finds that considering the nature of the past visitation that it would be in the child's best interest to begin with a small amount periodically until the child has had an opportunity to adjust. The court further finds that the father may not take the child from the grandfather's custody but must petition the court for visitation as previously ordered if he so chooses.

The trial court decreed that Grandfather would have visitation every other Saturday from 8:00 a.m. until 8:00 p.m. and any other times to which the parties agreed.

Mother appeals the trial court's order, arguing that the court erred in awarding Grandfather relief because (1) she did not oppose the visitation and (2) Grandfather failed

- 4 -

to establish that severing Chevy's relationship with Grandfather would cause substantial emotional harm to Chevy.

## II. ANALYSIS

We review a trial court's findings of fact de novo upon the record, affording the trial court a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Manning v. Manning*, 474 S.W.3d 252, 256 (Tenn. Ct. App. 2015). The Grandparent Visitation Statute governs this case. Questions of law, including statutory interpretation, are reviewed de novo, and no presumption of correctness attaches to the trial court's legal conclusions or its application of the law to the facts. *Smallwood v. Mann*, 205 S.W.3d 358, 361 (Tenn. 2006); *Uselton v. Walton*, No. M2012-02333-COA-R3-CV, 2013 WL 3227608, at *8 (Tenn. Ct. App. June 21, 2013).

The Grandparent Visitation Statute allows a grandparent to petition a court for visitation with a grandchild whose parents were never married to each other "if such grandparent visitation is opposed by the custodial parent or parents or custodian or if the grandparent visitation has been severely reduced by the custodial parent or parents or custodian." Tenn. Code Ann. § 36-6-306(a). "Severe reduction" or "severely reduced" is defined as "reduction to no contact or token visitation as defined in § 36-1-102." *Id.* § 36-6-306(f). The petitioning grandparent bears the burden of proving that the parent(s) or custodian opposed, or severely reduced, his or her visitation. *Uselton*, 2013 WL 3227608, at *12; *see Clark v. Johnson*, No. E2017-01286-COA-R3-CV, 2018 WL 2411203, at *5 (Tenn. Ct. App. May 29, 2018). If the petitioner is unable to make this showing, a trial court has no basis for engaging in a substantial harm analysis or awarding the petitioner any relief. *Manning*, 474 S.W.3d at 257-58; *see* Tenn. Code Ann. § 36-6-306(b), (c) (directing court to determine existence of substantial harm and whether visitation would be in grandchild's best interest if petitioner can overcome initial hurdles). Our Supreme Court has addressed this statute and has stated:

> The Grandparent Visitation Statute expressly provides that an initial petition for grandparent visitation may only be filed "if such grandparent visitation is opposed by the custodial parent or parents." Tenn. Code Ann. § 36-6-306(a). Unlike divorcing or unmarried parents who may agree that visitation is appropriate but disagree merely about the details of a visitation schedule, a petitioner relying upon the Grandparent Visitation Statute must establish in the first instance that the custodial parent opposed or denied grandparent visitation.[2]

---

[2]The statute was amended effective May 20, 2016, to expand a grandparent's basis for relief to include a severe reduction of visitation. 2016 TENN. PUB. ACTS, c. 1076, §§ 1 to 4.

*Lovlace v. Copley*, 418 S.W.3d 1, 21 (Tenn. 2013) (citing *Huls v. Alford,* No. M2008-00408-COA-R3-CV, 2008 WL 4682219, at *8 (Tenn. Ct. App. Oct. 22, 2008)).

In the case at bar, Grandfather did not allege in his petition that Mother (or Father) opposed his visitation with Chevy or that his visitation was severely reduced. We stated in *Clark v. Johnson* that a grandparent must prove that his or her visitation was opposed or severely reduced before the petition was filed. *Clark*, 2018 WL 2411203, at *8 (citing *Uselton*, 2013 WL 3227608, at *13). At trial, Mother testified that Grandfather did not call, write, or send any e-mails in an effort to see Chevy or for any other reason. Grandfather did not dispute this; he did not testify that he ever tried to see Chevy and was told "no" by Mother or by Father. Moreover, Grandfather did not allege that his visitation with Chevy had been severely reduced. In fact, Grandfather admitted that he was able to see Chevy after he filed his petition. Grandfather filed his petition on March 18, 2019, and he testified that Mother allowed him to see Chevy the following month.

Mother testified that she did not oppose Grandfather's visitation with Chevy but that she did not want to sign the legal papers Grandfather had drawn up. In addition, Mother explained that she did not want Father to be around Chevy unless Father filed a petition with the Juvenile Court of Madison County asking for visitation and had his visitation supervised, as that court ordered in May 2015. We have held that a parent's desire to limit the individuals to whom her child is exposed when visiting with a grandparent "cannot be considered opposition to visitation." *Green v. Evans*, No. M2011-00276-COA-R3-CV, 2012 WL 1107887, at *10 (Tenn. Ct. App. Mar. 30, 2012); *see also Uselton*, 2013 WL 3227608, at *13 (characterizing grandparents' objections to parent's limitations on visitation as "sheer hubris").

In the absence of proof that Mother opposed or severely reduced Grandfather's visitation, the trial court erred in granting Grandfather's petition and awarding him relief. Accordingly, we reverse the trial court's judgment and dismiss the case.[3]

### III. CONCLUSION

The judgment of the trial court is reversed and the case is dismissed. Costs of this appeal are assessed against the appellee, Dwight Morisch, for which execution may issue if necessary.

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE

---

[3]The second issue Mother raises on appeal is pretermitted by our resolution of the first issue she raises.