FILED

12/08/2021

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 5, 2021 Session

## IN RE: TRINITY P.

**Appeal from the Juvenile Court for Marshall County**
**No. 2020-OTH-02      Lee Bussart, Judge**

___

### No. M2020-01481-COA-R3-JV

___

The mother of a seven-year-old child appeals the trial court's decision to grant grandparent visitation. Following an evidentiary hearing, the trial court concluded that a rebuttable presumption of irreparable harm existed under Tennessee Code Annotated § 36-6-306(a)(5), generally referred to as the Grandparent Visitation Statute, because the child lived with the grandparents for more than twelve months, a cessation of the relationship would create a danger of substantial harm, and visitation was in the child's best interests based on the length and quality of the relationship and the existing emotional ties between the child and the grandparents. The trial court, however, made no finding concerning the threshold issue in -306(a): whether the mother opposed or severely reduced the grandparents' visitation prior to their filing the petition. Following a de novo review of the record, we have determined that the grandparents failed to establish that the mother opposed or severely reduced their visitation prior to filing the petition. As a consequence, the Grandparent Visitation Statute was not implicated. Therefore, the judgment of the trial court is reversed, and this matter is remanded with instructions to dismiss the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Miranda Venuti, Lewisburg, Tennessee, Pro Se.

Deborah Zimmerle, Lewisburg, Tennessee and Matthew Wilson, Tupelo, Mississippi, for the appellees, Bryan D. Wilson and Jamie R. Wilson.

# OPINION

## FACTS AND PROCEDURAL HISTORY

Miranda Venuti ("Mother") is the mother of Trinity P., born in July 2013. Mother's mother, Jamie Wilson ("Grandmother"), and her husband, Bryan Wilson (collectively, "Grandparents"), filed the underlying petition seeking visitation with Trinity.

For the first 18 months of her life, Trinity lived with Mother and Grandparents. Mother and Trinity later moved to Alaska where they resided with Trinity's father, Shaun Quintin Pearson.[1] During this time, principally from March through September 2015, Trinity visited Grandparents in Tennessee for extended periods. In September 2016, Mother and Trinity moved back to Tennessee while Mr. Pearson remained in Alaska.

For the next two years, Mother and Trinity shared a residence with Grandparents at Grandparents' home in Marshall County. In 2018, Mother met her current boyfriend, Jason Blizzard. Shortly thereafter, Mother and Trinity began living with Mr. Blizzard. A few months later, the three of them moved into a camper on Grandparents' property next to Grandparents' house. On nights when Mother was working, Trinity would sleep in Grandparents' house.

On Mother's Day, May 10, 2020, a dispute arose at the family compound,[2] resulting in a physical altercation among several family members, including Mr. Blizzard and Mother's step-sister, Jessica White. Both Mr. Blizzard and Ms. White were arrested for assault.[3] Immediately after the incident, Grandparents banned Mr. Blizzard from the property. As a consequence of the ban, Mother and Trinity moved out of the camper and

---

[1] Mother and the child's father are estranged, and his whereabouts are unknown. In the petition, the Grandparents alleged: "The biological father, Shaun Quintin Pearson's last known residence was in Fairbanks, Alaska. He has not had physical contact with the child in over 4 years."

[2] Grandparents shared the basement of their home with their other daughter, Jessica White; her boyfriend, Jesse Carter; and Jessica's pre-teen boys. Although Grandparents are married, Grandmother shares a bedroom with her boyfriend, Jason Parker. As the trial court noted in its final order, "[t]his unusual, but seemingly functional family model reached a breaking point on Mother's Day 2020, when an altercation occurred between Jason Blizzard and Jessica White."

[3] The facts are hotly disputed. Grandparents allege: "Mother's paramour, Jason Blizzard, assaulted Mother's sister, Jessica White. Mr. Blizzard hit Jessica multiple times striking her in the jaw and the eye. She blacked out and was transported to the hospital and treated for the injuries to her face. Mr. Blizzard was charged with Aggravated Assault on Jessica White." Conversely, Mother alleges that Jessica White, "entered the private property of Mother . . . with [Trinity] present, and violently attacked Mother, punching [Mother] in the chest and face multiple times, nearly knocking [Mother] unconscious, before punching Mr. Blizzard in the face multiple times as well. Both [Mother] and Mr. Blizzard suffered injuries as a result."

have resided with Mr. Blizzard in a rental home approximately fifteen miles away from Grandparents since that time.

Although tensions remained high one week after the Mother's Day altercation, Mother permitted Grandparents to keep Trinity overnight. When Mother arrived the next morning to pick up Trinity, Mother and Grandmother got into an argument, following which Mother informed Grandmother that future visits must be supervised, a condition Grandmother refused. Sometime later, Grandparents spent time with Trinity at a baseball field. Otherwise, the record is silent as to what, if any, communications or events occurred among Trinity and her Grandparents between the visit at the baseball field and the filing of the petition.

Grandparents filed their petition for visitation on June 23, 2020, approximately six weeks after the Mother's Day altercation. The case went to trial in September 2020, at which time the court heard testimony from Mother, Grandparents, and Mr. Blizzard.[4] In its final order, entered on October 14, 2020, the trial court granted the petition for visitation, concluding that:

> The facts clearly demonstrate undisputed compliance with [Tenn. Code Ann.] § 36-6-306(a)(5); therefore, the court finds presence of danger of substantial harm to the child based upon cessation of the relationship between Trinity and [Grandparents]. Therefore, a "significant existing relationship" exists between Trinity and [Grandparents], and the Court must now consider if awarding grandparent visitation is in the child's best interests . . . .

After making specific findings of fact concerning the best interest factors pursuant to Tennessee Code Annotated § 36-6-307, the court ruled: "Upon consideration of all the relevant[] statutory factors, the Court hereby awards grandparent visitation to [Grandparents]."

This appeal followed.

## ISSUES

The principal issue Mother raises, which we find dispositive, is whether Grandparents established, as Tennessee Code Annotated § 36-6-306(a) requires, that Mother opposed or severely reduced their visitation prior to the filing of the petition.[5]

---

[4] Grandparents were represented by counsel at trial and are represented on appeal; Mother was pro se at trial and is pro se on appeal.

[5] Mother's other issue is "[W]hether the trial court violated Mother's Constitutional rights ordering a prohibition on Mother, whose fitness was unquestioned, from spanking her Child, and a prohibition on

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006).

If the trial court fails to explain the factual basis for its decisions, the appellate court "may conduct a de novo review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly." *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) (citing *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005)).

Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

Mother does not dispute that Trinity and Grandparents have a substantial relationship within the meaning of Tennessee Code Annotated § 36-6-306, generally referred to as the Grandparent Visitation Statute. Instead, she contends that Grandparents provide no evidence to show that she opposed or severely reduced their visitation prior to the filing of the petition. In this regard, Mother relies on subsection (a) of Tennessee Code Annotated § 36-6-306, which states in pertinent part:

(a) Any of the following circumstances, when presented in a petition for grandparent visitation to the . . . juvenile court . . . necessitates a hearing if such grandparent visitation is **opposed by the custodial parent . . . or if the grandparent visitation has been severely reduced by the custodial parent**. . . .

---

Mother's speech which the trial court characterized as derogatory language." Grandparents only issue is: "Whether the lower court correctly ruled in favor of the Wilson's petition for grandparent's visitation rights."

(Emphasis added). After reviewing the record, we agree with Mother that Grandparents did not meet their burden under Tennessee Code Annotated § 36-6-306(a).

We begin our analysis by recognizing the important legal principle that parents have a fundamental right to raise a child as they see fit. *Troxel v. Granville*, 530 U.S. 57, 66–72 (2000) (recognizing that the U.S. Constitution gives parents the right to make decisions regarding the care, custody, and control of a child). "Because of the great deference that courts give to parental decisions, **the court must first determine whether the custodial parent opposed or severely reduced visitation**" when considering a petition for grandparent visitation. *Horton v. Cooley*, No. M2019-00945-COA-R3-CV, 2020 WL 2731235, at *4 (Tenn. Ct. App. May 26, 2020) (emphasis added) (citation omitted). Stated another way, "**the Grandparent Visitation Statute is not even implicated unless the grandparent can establish that visitation was opposed** [or severely reduced] **by the custodial parent before the petition for grandparent visitation was filed**."[6] *Uselton v. Walton*, No. M2012-02333-COA-R3-CV, 2013 WL 3227608, at *12 (Tenn. Ct. App. June 21, 2013) (emphasis added). As our Supreme Court explained:

> The Grandparent Visitation Statute expressly provides that an initial petition for grandparent visitation may only be filed "if such grandparent visitation is opposed by the custodial parent or parents." Tenn. Code Ann. § 36-6-306(a). Unlike divorcing or unmarried parents who may agree that visitation is appropriate but disagree merely about the details of a visitation schedule, a petitioner relying upon the Grandparent Visitation Statute must establish in the first instance that the custodial parent opposed or denied grandparent visitation.

*Lovlace*, 418 S.W.3d at 21 (footnote omitted) (citation omitted).

The petitioning grandparent bears the burden of proving opposition or severely reduced visitation. *Morisch v. Maenner*, No. W2020-00362-COA-R3-JV, 2021 WL 1102364, at *3 (Tenn. Ct. App. Mar. 23, 2021). "If the petitioner is unable to [prove either opposition to visitation or severe reduction in visitation], a trial court has no basis for engaging in substantial harm analysis or awarding the petitioner any relief." *Id.* (citing *Manning v. Manning*, 474 S.W.3d 252, 257–58 (Tenn. Ct. App. 2015); Tenn. Code Ann. § 36-6-306(b)-(c)).

---

[6] The General Assembly changed the threshold requirements for application of the Grandparent Visitation Statute in 2016. The 2016 amendment "changed the threshold requirements for application of the Grandparent Visitation Statute insofar as the trial court may now consider ordering visitation upon a showing by the petitioning grandparent that visitation, and as a result the grandparent-grandchild relationship, was severely reduced rather than requiring that visitation must have been opposed or denied by the custodial parent." *Horton*, 2020 WL 2731235, at *4 n. 3 (quoting *Clark v. Johnson*, No. E2017-01286-COA-R3-CV, 2018 WL 2411203, at *10).

To show a parent's opposition, a petitioner must demonstrate that, prior to filing the petition, the parent opposed grandparent visitation by specific word or deed. *See Uselton*, 2013 WL 3227608, at \*13. Thus, the Grandparent Visitation Statute "cannot be used by grandparents who think they are entitled to more or different visitation in the absence of a finding that the parents **actually or effectively** 'opposed' visitation." *Id*. at \*12 (quoting *Huls v. Alford*, No. M20080-004-COA-R3-CV, 2008 WL 4682219, at \*8 (Tenn. Ct. App. Oct. 22, 2008)) (emphasis added). Reasonable limitations on grandparent visitation "cannot be considered opposition to visitation." *Green v. Evans*, No. M2011-002-COA-R3-CV, 2012 WL 1107887, at \*10 (Tenn. Ct. App. Mar. 30, 2012) (holding that a parent's desire to limit the individuals to whom her child is exposed when visiting with a grandparent "cannot be considered opposition to visitation.").

To show a severe reduction in visitation, a petitioner must demonstrate that visitation has been reduced to either no contact or token visitation as defined by Tennessee Code Annotated § 36-1-102. *See* Tenn. Code Ann. § 36-6-306(f). Tennessee Code Annotated § 36-1-102(1)(C) defines "token visitation" as visitation that, "under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child[.]" This "statutory definition *does not* describe a reduction in visitation in comparison to any visitation the grandparents may have enjoyed previously." *Clark*, 2018 WL 2411203, at \*13 (emphasis added).

In its final order granting the petition, the trial court found (1) "the presence of substantial harm to the child based upon the cessation of the relationship between Trinity and [Grandparents]", and (2) that grandparent visitation was "in the best interest of Trinity" under Tennessee Code Annotated § 36-6-307. The trial court did not, however, address or make any findings of fact concerning the threshold issue: whether Mother had effectively opposed or severely reduced grandparent visitation prior to the filing of the petition. Because the trial court did not make findings of fact concerning the threshold issue, and in the interest of judicial economy, we have conducted a de novo review of the record to determine where the preponderance of the evidence lies concerning this issue. *See Gooding*, 477 S.W.3d at 783 (citations omitted).

At the commencement of our de novo review of the record we note that, although Grandparents' brief states "the Wilsons have, as a threshold matter, met the burden of proving that Miranda opposed their visitation," Grandparents' brief fails to cite any evidence supporting this conclusory allegation of opposition by Mother as required by Rule 27(A)(6) of the Tennessee Rules of Appellate Procedure and Rule 6(a)(4) of the Rules of the Court of Appeals. For this reason alone, we could deem the issue waived. *See Murray v. Miracle*, 457 S.W.3d 399, 403 (Tenn. Ct. App. 2014) (quoting *Bean v. Bean,* 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.") (citations

omitted). While this court is under no duty to verify unsupported allegations in a party's brief, *see id*. at 403 (citations omitted), we have nevertheless elected to proceed with our analysis of this issue.

Having reviewed the record, we find no evidence to support a finding that Mother effectively opposed or severely reduced Grandparents' visitation with Trinity prior to the filing of the petition. The only evidence of opposition to or reduction in visitation was Mother's statement to Grandmother that future visits would need to be supervised. However, reasonable limitations on grandparent visitation "cannot be considered opposition to visitation[.]" *Green*, 2012 WL 1107887, at *10. Mother's fundamental right to control the care and custody of Trinity includes the right to reasonably restrict visitation when appropriate. *See id*. Mother testified regarding concerns of alleged use of corporal punishment by Grandparents, in-home drug use by Grandmother, and the Mother's Day incident of familial violence. In light of these circumstances, the evidence preponderates against a finding that Mother's insistence on supervised visitation constitutes opposition to, or severe reduction of, visitation in the context of the statutory scheme. *See id*. (finding that drug use, allegations of abuse, and presence of danger, among other things, made a request for supervised visitation reasonable and, thus, did not constitute opposition).

Moreover, and significantly, Grandparents failed to show that they made any attempt to visit Trinity in the time between the last overnight visit, or the subsequent visit at the baseball field, and the filing of the petition. *See Morisch*, 2021 WL 1102364, at *4 (declining to find opposition when "[g]randfather did not call, write, or send any e-mails in an effort to see [the child].").

For the foregoing reasons, we conclude that Grandparents failed to establish that Mother opposed or severely reduced their visitation prior to the filing of the petition as required by Tennessee Code Annotated § 36-6-306(a). Accordingly, we reverse the judgment of the trial court and remand with instructions to dismiss the petition.

### IN CONCLUSION

The judgment of the trial court is reversed and this case is remanded with instructions to dismiss the petition. Costs of appeal are assessed against the appellees, Bryan D. Wilson and Jamie R. Wilson.

_____
FRANK G. CLEMENT JR., P.J., M.S.